J. WESTON ALLEN, trustee, *vs.* GEORGE E. FRENCH & others.

Middlesex.    December 10, 1900. — April 18, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

On an appeal from a decree of the Superior Court in equity, it appeared that the evidence was taken by a commissioner appointed at the request of both parties under Equity Rule 35 of that court. The judge at the request of the appellant under St. 1883, c. 223, § 7, reported the facts found by him. *Held,* that this court must consider not only the findings of the judge but also the evidence reported under Rule 35, upon which his decree was made, although the court would not reverse the decree unless clearly wrong and would accept as true the findings of fact reported unless clearly wrong.

The transfers of property by a debtor described in the opinion in this case were *held* to constitute both in effect and in purpose a preference under the United States bankruptcy act of 1898, and the transactions including those transfers were *held*

to be in fraud of the bankruptcy act in that they prevented and were intended to prevent a large portion of the debtor's property from being administered in bankruptcy, *and also* to be fraudulent at common law in that they were intended to place certain property of the debtor beyond the reach of his creditors.

BILL IN EQUITY by a trustee in bankruptcy of the estate of James H. Wentworth of Newton against George E. French of Newton, Charles W. Boynton of Bedford and others, praying that a transfer made by Wentworth to French and Boynton on July 14, 1898, of one hundred and ninety-eight shares of the capital stock of the J. H. Wentworth Company be adjudged to be in fraud of the provisions of the United States bankruptcy act and a fraud upon the creditors of Wentworth and on the plaintiff as representing them and that the defendants be ordered to transfer the shares of stock to the plaintiff, filed May 17 and amended October 4, 1899.

The case was heard in the Superior Court by *Mason*, C. J., who ordered a decree dismissing the bill with costs. The plaintiff appealed. The evidence had been taken by a commissioner appointed under Equity Rule 35. The plaintiff requested a report of facts under St. 1883, c. 223, § 7. The judge began his report of facts as follows :

" In this case a commissioner to take evidence was appointed under Rule 35 at the request of both parties. The plaintiff, having appealed from the decree entered, now within the time required by the statute requests under section 7 of St. 1883, c. 223, a report of the facts found. Being in doubt whether the appellant has the right to combine the two methods of taking the case to the full court or at this stage to substitute a report of facts found for a report of the evidence, in order that no rights may be denied this report is made."

After stating other findings, the report concluded as follows : " The defendant French was at the time of the transfer on July 14, 1898, a secured creditor, and for everything which he received beyond the security which he already held he paid full value and the transfer was not a preference and was not in violation of the bankrupt law.

" The bill does not contain specific allegations with reference to the payment and conveyance to the wife of J. H. Wentworth and the evidence does not disclose fully the circumstances under

which the same were made. The court does not find that there was any fraud of creditors in such payment and conveyance."

The evidence upon which this court founded its decision is described in the opinion.

*J. W. Allen,* for the plaintiff.

*J. C. Ivy,* for the defendants.

BARKER, J.  This bill was brought by the trustee of the bankrupt estate of James H. Wentworth to set aside certain transfers made on July 14, 1898, by the bankrupt, of one hundred and ninety-eight of the two hundred shares of the corporate stock of the J. H. Wentworth Company, to the defendant French. The ground first alleged was that the transfer was made to prefer French. By an amendment it was alleged that the transfer was in fraud of Wentworth's creditors.

The case was heard by the Chief Justice of the Superior Court, who entered a decree dismissing the bill with costs. The plaintiff then requested under St. 1883, c. 223, § 7, a report of the facts found and such a report was made. Thereafter the plaintiff appealed to this court. The evidence was taken by a commissioner appointed under the Equity Rule 35, and we have before us the pleadings, the evidence reported by the commissioner under the rule, the report of facts found, made under St. 1883, c. 223, § 7, the decree dismissing the bill, and the appeal.

The defendants contend that the plaintiff is not entitled to have this court consider the evidence reported by the commissioner, and that the only question open upon the appeal is whether upon the facts found and reported under St. 1883, c. 223, § 7, the decree should be affirmed. The provision made by the section cited is general and cannot be construed to exclude from its operation cases in which the right of having all the evidence reported under Rule 35 has been exercised. In all such cases it is the duty of this court to consider the evidence so brought up. At the same time, the ordinary rule of decision in cases heard and determined by a lower court or a single justice, and brought here by an appeal which requires us to consider the evidence upon which the decree was made, is to be applied. This rule prevents us from reversing the decree appealed from unless it is in our view clearly wrong. It also requires us to

accept as true the findings of fact reported, unless we find them to be clearly wrong.

Giving to the decree dismissing the bill, and to the findings of fact reported after the entry of the decree, the weight to which they are entitled under the rule of decision referred to, and considering the evidence reported by the commissioner under Rule 35, we find the facts concerning the transfers sought to be set aside as follows.

Wentworth's mercantile business was the purchase of lumber, the running of a planing and moulding mill and the sale of its product, chiefly in the form of interior finishings for building purposes. His statement of assets and liabilities on January 1, 1898, showed assets which he valued at $68,655.77, and liabilities of $45,321.06. Of the assets the cash and stock on hand in his mercantile business and the book accounts, land, machinery and buildings, and horses and teams belonging to that business made up $59,514.77. The other $9,141 was in outside land. The liabilities were, notes payable $11,875.80, bills payable $20,539.26, mortgage on mill $9,906, and mortgage on the outside land $3,000.

In the early part of the year 1898 he found difficulty in meeting his pecuniary obligations, and, about the last of March, he applied to his lawyer for advice. The lawyer at once asked who was his heaviest creditor, and upon receiving the reply that it was Mr. French of the Atlantic Lumber Company, told Wentworth to go and bring in French, who is the principal defendant. At this time Wentworth owed no debt to French personally, but French owned the stock of the Atlantic Lumber Company, a corporation, and managed and controlled its business, and was a creditor of the corporation to the amount of $18,000. The Atlantic Lumber Company was a creditor of Wentworth to the amount of $13,000 or more, and was his heaviest creditor. Besides this French was a personal friend of Wentworth, and desired to help him, because at a previous time Wentworth had aided French by indorsing his notes for the amount of $15,000, at a time when French needed accommodation. French was at once informed that Wentworth did not have the money to meet his obligations, and from that time French took an active part in the arrangement of Wentworth's affairs, with two purposes

in view. The first was to save the Atlantic Lumber Company from any loss on account of Wentworth's indebtedness to it, and the second to help Wentworth save some part of his assets from being applied in discharge of his other debts, by turning it over to the wife of Wentworth. As the first step in pursuance of these purposes Wentworth conveyed and French received Wentworth's outside land in extinguishment of $7,000 of the $13,000 claim of the Atlantic Lumber Company. This left Wentworth with his mercantile business as his only resource. French next caused Wentworth to have created a corporation, the J. H. Wentworth Company, with a capital stock fixed at the sum of $20,000, in payment of which the stock, book accounts, horses and teams belonging to Wentworth's business, and the equity of his mill and machinery were all transferred and conveyed to the corporation.

The charter of the corporation was issued on April 25, 1898. The corporators were Wentworth, one Gilkey, his clerk and bookkeeper, and a Mr. Dickerman, a friend and neighbor of Wentworth's. Dickerman was then an indorser for Wentworth to the amount of $5,000, and had a claim against him growing out of an old transaction in mining stocks, and also had a mortgage of $1,200 on a house the title of which stood in Mrs. Wentworth. The two hundred shares of the capital stock of the corporation were issued on April 29, 1898, one share to Dickerman, one share to Gilkey, and one hundred and ninety-eight shares to Wentworth. Dickerman paid nothing for his share, and Gilkey's share was paid for by $100 given to him by Wentworth for that purpose. Of the one hundred and ninety-eight shares issued to Wentworth one hundred were pledged by him to Dickerman as collateral security for a note for $10,000 given by Wentworth to him, which note was also secured by a third mortgage of the mill and machinery. For this $10,000 note, Dickerman gave to Wentworth $7,800 in money, released his $1,200 mortgage on Mrs. Wentworth's land, and gave up his claim growing out of the old mining stock transaction.

On May 3, 1898, Wentworth pledged twenty of his remaining ninety-eight shares to secure payment of a note of $2,000 made by his wife on December 1, 1897, leaving him with seventy-eight shares unpledged. In paying in the capital stock he had

divested himself of all the assets of his business which could have been taken for his debts, which assets were his stock of lumber and supplies worth over $16,000, book accounts worth $5,000, and horses and teams worth $1,000. There was no sale for the shares of stock which he received in lieu of his assets transferred to the corporation in the paying in of its capital. The seventy-eight unpledged shares and the $7,800 delivered to him by Dickerman on the $10,000 note were all the means he had in hand with which to pay his debts, save the equities in the pledged shares.

French then caused Wentworth to call a meeting of his creditors and to offer them a compromise, promising to lend him $5,000 with which to pay them twenty-five cents on a dollar. The call was made early in May. At the meeting French became one of the committee. They recommended the creditors to accept thirty per cent of their claims, in full payment, and at an adjourned meeting held on May 13, 1898, the report was accepted and the recommendation adopted. An agreement bearing that date was executed by thirteen of Wentworth's creditors assigning their debts due from him to his lawyer, to the extent and amount set opposite their signatures, the assignment to be void if the thirty per cent should not be paid. This agreement was signed by the Atlantic Lumber Company by French as treasurer, in the sum of $4,216, which was at least $2,000 less than the amount of Wentworth's debt to the company. Only a part of the creditors assented to the proposed compromise.

On May 28, 1898, one of the creditors who had not agreed to accept the compromise, and whose debt amounted to several hundred dollars, attached, in a suit to collect his debt, Wentworth's interest in the one hundred and ninety-eight shares of stock. On May 31, 1898, French and Wentworth agreed in writing that the assignment of claims by his creditors dated May 13, to Wentworth's lawyer, and the latter's authority over those claims, should be subject to the exclusive control and direction of French, and this writing was assented to in writing by the lawyer.

On June 7, 1898, Wentworth, expecting to get from French $5,000 with which to make his compromise, gave to French nine notes for $1,250 each, dated May 23, 1898, each of which notes

pledged the seventy-eight shares of Wentworth's stock, remaining until then unpledged, as collateral security for the payment of the note. These notes aggregated in amount $11,250. This sum was arrived at by adding to $6,250, the amount of the Atlantic Lumber Company's claim, the $5,000 which French had agreed to lend Wentworth to make his compromise. Upon obtaining the nine notes French gave to Wentworth French's individual cheque dated May 23, 1898, for $2,400.15, which was the sum required to pay the assenting creditors, other than the Atlantic Lumber Company, thirty per cent of their claims stated in the compromise agreement of May 13, 1898. At the same time French refused then to give Wentworth any more of the promised $5,000, and he never gave to Wentworth any part of it but the $2,400.15. From June 7, 1898, French was a personal creditor of Wentworth to that amount. As French never bound himself to pay any part of the Atlantic Lumber Company's claim, and never advanced more than the $2,400.15 that sum was in truth the whole amount for which he could hold the seventy-eight shares under the pledges contained in the nine notes, which had no other consideration.

The mortgages given to Dickerman as security for the $10,000 note of April 8, 1898, which pledged to him the one hundred shares, were of value, covering real estate and machinery of the assessed value of $13,500, and being subject to prior mortgages of only $9,900. The value of these mortgages must be taken into account, and there can be no doubt that Wentworth's equity in this one hundred shares of stock was worth several thousand dollars, unless, owing to the language of the note which contained the pledge, Dickerman could hold the stock to indemnify him as indorser for Wentworth.

The $2,000 note of December 1, 1897, made by Mrs. Wentworth, for which the twenty shares of stock were transferred as collateral on May 3, 1898, was held by one Newhall. This note did not represent a debt, but grew out of a land and building transaction between Mrs. Wentworth and Newhall, and the real purpose of the note, if it was not a mere cover, was to make it certain that Newhall would get his half of the profits of the real estate transaction, which profits were only $500, and the pledge of the twenty shares was in effect for no more than that sum.

Moreover Mrs. Wentworth was pecuniarily responsible and, in estimating the value of Wentworth's equity in the twenty shares, it is to be taken into account that the pledge of those shares was for no debt which he was bound to pay ; and that if the apparent debt should be discharged by sale of the stock Wentworth would have the right to an indemnity, which right would pass to his vendee upon his transfer of his equity in the twenty shares.

The Atlantic Lumber Company had a customer in New Hampshire named Boynton, who operated a planing and lumber-working mill.   On July 8, 1898, Wentworth's equities in. the one hundred and ninety-eight shares of stock being in the situation already stated, Wentworth executed and delivered to French a sealed instrument by which Wentworth agreed to give to Boynton, or to any one acting on his behalf, the exclusive right to purchase any and all of Wentworth's equities in the shares for the sum of $4,000, to be paid one half in cash and the balance in a note to be made by French payable to Mrs. Went-worth, the offer to be accepted in writing on or before noon of July 11, 1898, and a reasonable time after that noon to be allowed in which to transfer the shares, which Wentworth covenanted were one hundred and ninety-eight in number, and to pay the cash and deliver the note.

On July 11, 1898, the limit of time in the offer was extended to noon of July 14, 1898.   On that day, at the mill, all of Wentworth's interests in the one hundred and ninety-eight shares of stock were transferred absolutely to French, who by these transfers became the owner of the one hundred shares pledged to Dickerman subject to that pledge, and the absolute owner of the other ninety-eight shares.   Of these French caused one share to be transferred to Boynton, who had no interest in the transaction, and served simply as a tool for the Atlantic Lumber Company, and one share each to two employees of that company. Dickerman, who holding one share of stock in his own name had been a director and president of the Wentworth Company since its organization, with a salary of $20 a week, resigned his offices, as also did Wentworth, who had been a director and treasurer up to that time, and new officers were installed in their places, thus giving the Atlantic Lumber Company absolute control of

the Wentworth corporation and of its assets and business and good will. In consideration of these transfers to him French gave up to Wentworth the nine notes of $1,250 each, dated May 23, 1898, and the notes and claims of the Atlantic Lumber Company against Wentworth. As part of the transaction, and at the same time, French gave to Mrs. Wentworth the Atlantic Lumber Company's cheque for $3,000, which she deposited in bank to her own credit. French also at the same time conveyed to Mrs. Wentworth an equity worth $2,000 in a house and lot, and covenanted with Wentworth to pay toward the liquidation of his then debts thirty per cent thereof, and also to pay to Wentworth for repairs not exceeding $175 in amount, which the latter was to make on the house conveyed by French to his wife, with a stipulation that the total sum to be paid by French should not exceed $2,000. In fact French never did contribute any more money toward the liquidation of Wentworth's debts.

The demands of the Atlantic Lumber Company amounting to $6,250 had not been paid or extinguished up to the time of these transfers of July 14, 1898. As a part of the transactions of which those transfers were a part these claims were extinguished. French the sole owner and the manager of the Atlantic Lumber Company in part consideration of the extinguishment of those claims received the transfer of the debtor's interest in the stock, and he and Wentworth did such other acts as then and there practically vested the control of the Wentworth Company and of its assets and business in the Atlantic Lumber Company.

This was a wholly voluntary proceeding on the part of French, and it is a necessary inference that in concluding the transactions of July 14, French was acting for the Atlantic Lumber Company, and that that company received what it deemed to be and what upon the evidence was an equivalent for its claims which were then cancelled. This is supported by the facts that Wentworth's equities in each of the three blocks of stock were of value, that in the twenty shares of $1,500 at least, and that in the seventy-eight shares of $5,400, and in the one hundred shares of probably several thousand dollars more, while the transfers, the resignations and the new elections gave, in addition to the intrinsic value of the equities, the good will and the control of the business.

The working of the scheme up to July 14, 1898, had cost French and the Atlantic Lumber Company the $2,400.15, advanced on June 7, but the company had received full payment of $7,000 of its $13,000 claim. By the transfers of July 14, 1898, the Atlantic Company got complete control of the manufacturing stock, book accounts and horses and teams which, when French began his campaign were Wentworth's unencumbered assets, and which at all times were worth over $20,000. The Atlantic Company and French having paid in addition to the $2,400.15, the $3,000 turned over to Mrs. Wentworth on July 14, and $2,000 more in the land then conveyed to her, the whole cost to French and his corporation was $7,400.15. Add to this the Atlantic Lumber Company's claim of $6,250, making $13,650.15, and French by means of the transfers of July 14 not only in effect obtained for the Atlantic Company payment in full of its debt of $6,250, but a handsome surplus in addition, which it could realize at leisure, with the stock of the Wentworth Company in the hands of French, Boynton, and the two employees of the Atlantic Company.

This was in effect, as well as in purpose and intention, a preference of the Atlantic Lumber Company to the whole amount of its debt, and so was contrary to the provisions of the bankruptcy act forbidding preferences. The transactions of July 14, 1898, including the transfers from Wentworth to French were also a fraud upon the bankrupt act in that they prevented and were intended to prevent his rights' in the shares from being administered in bankruptcy. The transfers were also fraudulent at common law in that they were intended to place Wentworth's right in the shares beyond the reach of his creditors. The transfers should therefore be declared void and set aside. The decree dismissing the bill with costs must be reversed, and the case remanded to the Superior Court with directions to enter a decree for the plaintiff, in accordance with this decision.

*So ordered.*