# ALEXANDER J. HART *vs.* JAMES RONEY, Gar-nishee, etc.

*Purchase of Stock of Merchandise Without Compliance with Act of 1900, ch. 579—Presumption of Fraud Under the Statute is Rebuttable.*

The Act of 1900, ch. 579, provides that a sale "of an entire" stock of merchandise in bulk will be presumed to be fraudulent and void as against the creditors of the seller unless the seller and purchaser shall at least five days before the sale make an inventory as therein provided and unless the purchaser shall make certain inquiries of the creditors of the seller and give them notice, etc. The garnishee in this case purchased an entire stock of merchandise without complying with the statute, of which he had no knowledge, and on the next day plaintiff, a creditor of the seller, issued an attachment and levied on the merchandise so sold. *Held*,

1st. That a purchase of merchandise without complying with the statute is not made conclusive evidence of fraud, but only such *prima facie* evidence thereof as to shift the burden of proof to show the good faith of the transaction to the purchaser.

2nd. That the evidence in this case overcomes the presumption raised by the statute and shows that the sale of the goods to the garnishee was made in good faith and that he paid a fair price for the same.

Appeal from the Circuit Court for Cecil County (PEARCE, C. J., STUMP and MARTIN, JJ.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD and SCHMUCKER, JJ.

*Wm. S. Evans* and *L. M. Haines*, for the appellant.

*Albert Constable*, for the appellee.

BOYD, J., delivered the opinion of the Court.

An attachment was issued by the appellant against Joel H. Dean, which was on motion of the appellee quashed. There are two bills of exception in the record—the first presenting

the ruling of the Court below on an objection to certain evidence offered, and the other having reference to the order quashing the attachment. As the first has been abandoned, it is only necessary for us to consider the second exception which involves, primarily, the construction of chapter 579 of the Act of 1900, being sec. 18 of Art. 83, as found in the Supplement to the Code.

That section provides that "A sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in bulk, will be presumed to be fraudulent and void as against the creditors of the seller" unless the seller and the purchaser shall at least five days before the sale make an inventory as therein provided and unless the purchaser shall in good faith make certain inquiries as to the creditors of the seller and give them notice of such proposed sale. The seller is also required to fully and truthfully answer in writing each and all the inquiries to be made of him. The appellee purchased of Dean his entire stock of merchandise in bulk and it is admitted the provisions of this section, which we need not set out more fully, were not complied with. The contention of the appellant is that the sale was fraudulent and void by reason of the failure of the parties to do what is required by this Act and the property thus sold is liable to attachment for fraud, without regard to the other evidence. We do not, however, so construe the statute. It says such sale *"will be presumed to be fraudulent and void"* unless, etc. If the Legislature had intended that it should be *conclusively* presumed to be fraudulent, it would doubtless have said so, or if it had intended to prohibit all sales of stocks of merchandise in bulk unless these provisions were complied with, it would have used other language than that to be found in the statute. There was no reason for saying that the sale *"will be presumed to be* fraudulent and void" if the Legislature had intended that it should be *absolutely void*, unless the various requirements are complied with. The language used not only does not necessarily have

that meaning, but it suggests the contrary. A party accused of crime when put on trial is *presumed* to be innocent and in civil proceedings good faith is *presumed*, under the ordinary rules of evidence, but no one understands from the use of the word "presumed" in those connections that the presumption cannot be overcome by proof. And we read this statute we find that instead of saying that such sales shall be fraudulent and void, the Legislature only declared that they "will be presumed" to be so, which conveys the idea that they will be so considered until the contrary is proven.

If anything more than the language itself be necessary to justify the construction we have placed on it, section 19 of this Act of 1900 furnishes it. It reads, "Except as expressly provided in the preceding section nothing therein contained, nor any act thereunder shall change or affect the present rules of evidence in the present presumptions of law." It thereby declared that it was changing or affecting "the present rules of evidence," etc. Prior to the passage of the Act, the presumption was that such a transaction was *bona fide*, and the burden was on the one attacking it to prove fraud, but the statute shifts the burden of proof, unless its provisions are complied with. The difficulty in proving fraud was doubtless known to the members of the Legislature and as those endeavoring to do so were frequently without evidence, unless they made the parties to the alleged fraud their witnesses, it is apparent that the Legislature thought it would lessen, if not relieve, the difficulty by casting the burden on the parties to establish the *bona fides* of such transactions. To have made such sales *absolutely* void and *conclusively* fraudulent, unless the parties complied with such provisions as are contained in the law, might in some cases have worked great injustice. The Act took effect from the date of its passage, which was April 10th, 1900, and the testimony shows that the appellee did not know of its existence when he made the purchase. Any one who made such a purchase on the 11th day of April, 1900, was amenable to it. It is not probable, therefore, that the Legislature would have made such a radical change in the law

affecting the rights of property as to declare such sales abso-
lutely void, as against creditors, unless these requirements be
complied with, without giving some opportunity to the public
to know such change was made.    If it did so intend, it ought
to have said so in language that admits of no other construc-
tion.    The violation of the statute is *evidence* of fraud, but is
not conclusive.    The plaintiff in an attachment proceeding
based on fraud is required to establish it in order to sustain his
attachment.    A *prima facie* case can be made out by proving
a sale of the stock of merchandise in bulk without compli-
ance with the provisions of the statute, and the burden is then
on the party claiming or interested in the property to over-
come the presumption of fraud, but that is all it means.    It
is therefore necessary for us to determine whether that has
been done.

The plaintiff called the appellee as his witness and he admitted
that he had not complied with this law, and was not aware of
it.    He further testified that he had paid the defendant, Dean,
$256 in cash and had given credit for $104, which was due
him for rent.    That is uncontradicted and there is no evidence
to show that the stock was worth more.    The appellee and
his son, who was more familiar with the business than he was,
examined the stock and made an estimate of its value.    The
son thought it was only worth $350.00, but the appellee was
of the opinion that it was worth the amount he paid.    He
swore positively that he purchased the stock to secure his rent
and to have the business conducted in a more profitable way,
as the store-room occupied by Dean belonged to him and ad-
joins his butcher-shop, and he thought an active business in
that store-room would aid the business he was engaged in.
He bought it with a view of establishing his son there.    He
testified that there was no secrecy in the transaction and he
did not suspect that Dean had any motive in selling beyond
going out of business "and to get money to pay off some
small bills."    He also said that the defendant told him he had
some bills he wanted to pay and he had no reason to think
there was any claim against Dean which he was unable or

unwilling to pay. There is nothing in the testimony of the appellee, who, as we have seen, was called by the appellant, which could in any way tend to establish fraud on his part and when taken in connection with the fact that it is not pretended that he did not pay full consideration for the goods it is sufficient to overcome the presumption which the statute raises, in the absence of other proof. The plaintiff also proved by a justice of the peace that the appellee had called on him the evening before the sale to inquire if he had a judgment against him and he told him he had and the appellee said Dean owed him rent. He asked the appellee if he was going to push him and he said " not if you don't," and " he thought if Dean was given a chance he would pull through." The justice told the appellee that Dean was paying the claim in installments and " after he paid the next payment he would be pretty well along." It is not pretended that the statements of the appellee induced the justice not to proceed on the judgment. The appellee also inquired of another party whether a judgment would be binding if no execution had been issued. That testimony did not tend to establish fraud, but it only showed that the appellee was making inquiries to ascertain whether he could safely purchase the property. He said they had been negotiating for four or five days, but did not consummate the transaction until about five o'clock the evening before this attachment was issued. If it be true, as he testified, that he thought Dean intended to pay his debts and wanted to get money to pay them with, the fact that he made such inquiries as these was not evidence of fraud, but was only the prudent course to pursue. He had heard of the claim before the justice of the peace and wanted to be assured that there was no lien on the property. Such inquiries would not, independent of this statute, be evidence of fraud, nor would the mere knowledge that the defendant owed some debts be, and unless we adopt the appellant's construction of the statute, they reflect but little upon the question of fraud by the appellee. There is nothing in the record from which it can be inferred that he had any thought or intention of aiding the defendant

in defrauding his creditors and his evidence shows the contrary. This attachment having been issued the day after the sale, if the defendant had intended to apply the proceeds of the sale to the payment of his debts, he had but little opportunity to do so before it was issued. But if it had been shown that Dean's intention was to defraud his creditors it would not make the appellee liable, unless he was a party to it. As the testimony overcomes the presumption raised by the statute, the Court below was right in quashing the attachment, and its order will be affirmed.

> *Order affirmed, the appellant to pay the costs.*

(Decided June 12th, 1901.)