LARS O. THORPE and Another v. PENNOCK MERCANTILE COMPANY
and Others.[1]

July 20, 1906.

Nos. 14,826—(159).

### Insolvency—Priorities of Creditors.

A partnership, being insolvent, obtained new capital from outside parties, with the understanding that a corporation would be organized and
the business continued. A corporate form and name were adopted, stock
certificates were issued to the partners and parties furnishing the new
capital in proportion to their respective interests, and for a short time
the business was carried on under the form of a corporation. Thereafter
incorporation was legally effected, and the stock already issued was
treated as the stock of the corporation. The property of the partnership
was transferred to the corporation without compliance with chapter 291,
p. 357, Laws 1899. The corporation purchased additional merchandise,
incurred new debts, and carried on business until it became insolvent.
The assets were by agreement transferred to trustees who reduced them
to cash. In an action to determine the respective rights of the partnership and corporation creditors, *held*, that the creditors of the corporation
are entitled to full payment of their claims before the creditors of the
partnership are entitled to participate in the fund.

### Application of Firm Assets.

The right to have partnership property applied to the payment of partnership debts is a right which each partner has against the other partners. It may be terminated by agreement, or by a good-faith sale and
transfer of the partnership property.

### Partnership Creditors.

Partnership creditors have no lien upon the partnership property.

### Their Rights.

But partnership creditors may be substituted to the rights of the partners to have the property of the partnership applied to the payment of
partnership debts before it is used to pay the individual debts of the
partners or otherwise improperly disposed of. This right of the creditors ceases, however, when the rights of the partners against each other
are lost by the disposition of the property.

[1] Reported in 108 N. W. 940.

**Transfer of Firm Property.**

The members of a partnership have the right to dispose of the property of the partnership, and thus destroy this equity of creditors. But the rights of creditors cannot be defeated by the sale of partnership property which is made for the purpose of defrauding the creditors.

**Presumption Created by Statute.**

Chapter 291, p. 357, Laws 1899, entitled "An act to prevent sales of merchandise in fraud of creditors," which declares that sales made without compliance with its provisions "will be presumed to be fraudulent and void" makes such sales presumptively fraudulent only. The statute merely prescribes a rule of evidence.

**Act Constitutional.**

Chapter 291, p. 357, Laws 1899, is constitutional.

**Issue of Stock Certificates.**

When stock certificates are issued in contemplation of incorporation, the issue of stock may, after incorporation, be adopted by the corporation, and the holders thereby become stockholders without the formal issue of new certificates.

Action in the district court for Ramsey county to determine the respective rights of the creditors of defendant Pennock Mercantile Company, a corporation, and A. O. Sather & Company, a partnership, to moneys realized from a sale of the assets of the corporation by plaintiffs as trustees. The case was tried before Bunn, J., who made findings of fact, and as conclusions of law found that the moneys in possession of the trustees, after paying the expenses of administering the trust, should be applied first upon the indebtedness of the corporation, and that the residue should be divided among the partnership creditors. From an order denying a motion for a new trial, defendants Kandiyohi County Bank and others, partnership creditors, appealed. Affirmed.

*Otterness & Downs, George N. Otterness, Reynolds & Roesser, S. A. Porter,* and *O'Brien & Albrecht,* for appellants.

*A. E. Boyesen* and *Kerr & Fowler,* for respondents.

ELLIOTT, J.

A. O. Sather & Co., a partnership composed of A. O. Sather, O. P. Sather, and O. F. Johnson, was engaged in the general mercantile business at Pennock, Minnesota. In the spring of 1904 the firm was indebted to various creditors, and was insolvent in the sense that it was

unable to pay its debts in the ordinary course of business, although apparently the book value of its assets exceeded the amount of its liabilities. In March, 1904, Albert Nelson and Peter Ellingson agreed to put $2,000 each into the business, and it was understood between them and the members of the partnership that a corporation should be formed, the stock of merchandise of the firm transferred to the corporation, and corporate stock issued to the partners and to Nelson and Ellingson in proportion to their respective interests. Nelson and Ellingson each paid the $2,000 to A. O. Sather in March or April, 1904, and the money was deposited in the bank to the credit of A. O. Sather & Co. After May 1 the business was conducted under the name of the Pennock Mercantile Company, although the corporation was not organized until June 1. When the corporation was organized the stock of merchandise of the firm, valued at $20,789.02, was transferred to it without complying with the so-called "bulk law," and in payment therefor the corporation issued its capital stock to the amount of $20,000 to the members of the partnership and to Nelson and Ellingson in proportion to their respective interests in the partnership. Of this stock A. O. Sather received $10,000, Johnson $4,000, and O. P. Sather, Nelson, and Ellingson $2,000 each. The corporation assumed the debts of the firm to the amount of $789.02, and this, together with the stock issued, amounted to the agreed value of the merchandise.

After its organization the corporation continued to carry on the business. New goods were purchased at a cost of about $10,000 and added to the stock which had been received from the partnership. Until September, 1904, the bank account of the old firm of A. O. Sather & Co. was continued and used as the bank account of the new corporation. In it was deposited funds of the corporation and money of the old firm, and out of it debts of both were paid. The books of account of the corporation attempted to keep straight these financial transactions. In September, 1904, the corporation found it impossible to continue business. It was indebted in about $10,000 for merchandise bought about June 1, 1904, and creditors of the old firm of A. O. Sather & Co. were also seeking payment of their claims from the copartners. On September 27, 1904, the company ceased business and entered into a trust agreement under which the trustees took possession of the assets and thereafter sold the same for $14,000.

This action was brought, pursuant to the terms of the trust agreement, to determine the respective rights of the corporation creditors and the firm creditors in the money in the hands of the trustees. The partnership creditors claim that they are entitled to share on an equality with the corporation creditors for the reason (1) that the corporation assumed and agreed to pay the debts of the partnership in part consideration of the transfer; (2) that the transfer was made with intent to defraud the partnership creditors; and (3) that the assets of the partnership constitute a trust fund for the payment of the partnership creditors. The trial court found against the claims of the partnership creditors and from an order denying a new trial plaintiffs appeal to this court.

1. The finding that the corporation did not agree to pay the partnership debts is clearly sustained by the evidence, and no good purpose will be served by reviewing the facts at this time.

2. We are also entirely satisfied that the evidence fails to show intent to defraud the partnership creditors either in the formation of the corporation or in the transfer to it of the partnership assets. Certainly neither Nelson nor Ellingson intended to defraud when they put their money into the concern. It is very apparent that the object of all those interested was to get new capital into the business, reorganize, and continue the business without any purpose or design of defrauding creditors. In fact as the partnership was insolvent, the parties may well have reasoned that the interests of the creditors would be advanced by the organization of the corporation under conditions which would render solvent the holders of the stock who were responsible for the partnership debts.

(a) But it is contended that the transfer to the corporation was fraudulent and void because of the failure of the parties to comply with the provisions of chapter 291, p. 357, Laws 1899. Section 1 of this statute provides as follows:

> A sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in gross will be presumed to be fraudulent and void as against the creditors of the seller, unless the seller and purchaser

shall at least five days before the sale in good faith make a full and detailed inventory showing the quantity and so far as possible, with the exercise of reasonable diligence, the cost price to the seller, of each article to be included in the sale; and unless such purchaser shall at least five days before the sale in good faith make full, explicit inquiry of the seller as to the names and places of residence or places of business of each and all of the creditors of the seller and the amount owing each creditor; and unless the purchaser shall at least five days before the sale in good faith notify or cause to be notified, personally or by registered mail, each of the seller's creditors of whom the purchaser has knowledge, or can with the exercise of reasonable diligence acquire knowledge, of said proposed sale and of the said cost price of the merchandise to be sold and of the price proposed to be paid therefor by the purchaser. The seller shall at least five days before such sale fully and truthfully answer, in writing, each and all of said inquiries.

The appellants contend that this statute renders the sale of the merchandise in question absolutely void, while the respondents contend that the statute must be construed as creating a presumption only which may be overcome by evidence and further that if the statute is to be construed as rendering the sale void, it is unconstitutional.

This statute was before the court in Kolander v. Dunn, 95 Minn. 422, 104 N. W. 371, and it was assumed that it established a rule of evidence only, but the full force and effect of the statute was not considered. During the past ten years statutes very similar to the one under consideration have been passed in many states. While similar in terms and having for their purpose the prevention of frauds upon parties who sell goods to merchants engaged in retail business, these statutes differ somewhat in phraseology and particularly in the language which declares the effect of the failure to comply with their provisions. In certain states the legislatures expressly declare transfers in violation of the statute absolutely void, while in others the transfers are made presumptively fraudulent only and the parties are permitted to show their good faith, and thus avoid the effect of the prohibition. One group of

statutes prohibits the sales. Another declares a rule of evidence. This appears from an examination of the following statutes:

California: Civ. Code, § 3440, as amended by St. 1903, p. 111, c. 100. "Every transfer of personal property other * * * is conclusively presumed to be fraudulent and therefore void."

Colorado: Sess. Laws 1903, p. 225, c. 110. "Shall be prima facie evidence that said sale was fraudulent."

Connecticut: Pub. Acts 1903, p. 49, c. 72, merely prohibits sale, without declaring effect of violation.

Delaware: Laws 1903, p. 748, c. 387. "Will be presumed to be fraudulent and void."

District of Columbia: Act April 28, 1904, c. 1809 (33 Stat. 555). "Such sale or transfer shall as to any and all creditors of the vendor be conclusively presumed fraudulent and void."

Georgia: Laws 1903, p. 92, No. 457. "Such sale or transfer as to any and all creditors of the vendor shall be conclusively presumed to be fraudulent."

Idaho: Sess. Laws 1903, p. 11 (H. B. 18). "Shall be conclusively presumed fraudulent and void."

Illinois: Laws 1905, p. 284. "Will be presumed to be fraudulent and void."

Indiana: Acts 1901, p. 505, c. 220, as amended by Laws 1903, p. 276, c. 153. "Will be fraudulent and void."

Kentucky: Acts 1904, p. 72, c. 22. "Shall be fraudulent and void as against the creditors of the seller arising out of said stock of merchandise."

Louisiana: Acts 1896, p. 137, No. 94.

Maine: Acts & Res. 1905, p. 119, c. 114. "Shall be void."

Maryland: Laws 1900, p. 907, c. 579. "Will be presumed to be fraudulent and void."

Massachusetts: Acts & Res. 1903, p. 389, c. 415. "Shall be fraudulent and void."

Michigan: Laws 1905, p. 322, No. 223. "Shall be void."

New York: Laws 1902, p. 1249, c. 528. "Shall be fraudulent and void," amended after the decision in Wright v. Hart (N. Y. 1905) 75 N. E. 404, so as to read, "will be presumed to be fraudulent and void." Laws 1904, p. 1385, c. 569.

Ohio: Laws 1902, p. 96 (H. B. 334). "Shall be fraudulent and void."

Oklahoma: Sess. Laws 1903, p. 249, c. 30. "Will be presumed to be fraudulent and void."

Oregon: Laws 1899, p. 248 (B. & C. Comp. p. 1479, c. 7). "Shall be conclusively presumed to be fraudulent."

Pennsylvania: Laws 1905, p. 62, No. 44. "Shall be deemed fraudulent and void."

Tennessee: Laws 1901, p. 234, c. 133. "Shall be presumed to be fraudulent and void."

Utah: Laws 1901, p. 67, c. 67. "Is fraudulent and void."

Virginia: Code 1904, § 2460a, at page 1217. "Shall prima facie be presumed to be fraudulent and void."

Washington: Laws 1901, p. 224. "Shall be fraudulent and void."

Wisconsin: Laws 1901, p. 684, c. 463. "Shall be presumed to be fraudulent and void."

It is fair to assume that, if the legislature·had intended that the failure to observe the requirements of the statute should render the transfer absolutely void, it would have done as the legislatures of other states have done—said so, in clear and unmistakable language. The terms of the statute are in their nature strict and severe, when applied to ordinary business transactions, and they should not be held to imply conclusively that such transactions are in bad faith when the parties are in fact actuated by proper and honest motives. Fisher v. Herrmann, 118 Wis. 424, 95 N. W. 392. As said in Hart v. Roney, 93 Md. 432, 49 Atl. 661, "the violation of the statute is evidence of fraud but is not conclusive. · * * * A prima facie case can be made out by proving a sale of the stock of merchandise in bulk without compliance with the provisions of the statute and the burden is then on the party claiming or interested in the property to overcome the presumption of fraud, but that is all it means."

(b) So construed, we have no doubt but that the statute is constitutional. The construction for which the appellants contend would, under the authority of some of the cases, render the act unconstitutional. But even on this theory, the weight of authority sustains the statute.

The original New York act (Laws N. Y. 1902, p. 1249, c. 528), which provided that the sale "shall be fraudulent and void," was held

invalid in Wright v. Hart, 182 N. Y. 330, 75 N. E. 404, reversing 103 App. Div. 218, 93 N. Y. Supp. 60.  The court said that the act "does not differentiate between sales which are honestly made and sales that are made with an intent to defraud." Evidently for the purpose of removing this objection the statute was subsequently amended and made to read, such sales "will be presumed to be fraudulent and void."

The Utah statute, which also made the sale "fraudulent and void," was held unconstitutional in Block v. Schwartz, 27 Utah, 387, 76 Pac. 22, 65 L. R. A. 308, 101 Am. St. 971, because it deprived the owners of the goods of their property without due process of law.  The court distinguishes the statute from those which make the sale presumptively fraudulent only.  See the earlier case of Nelden-Judson v. Commercial, 27 Utah, 59, 74 Pac. 195.

The Ohio statute, which made the sale fraudulent and void, was held unconstitutional in Miller v. Crawford, 70 Oh. St. 207, 71 N. E. 631, because it placed unwarranted restriction upon the right of the individual to acquire and possess property and discriminated in favor of certain classes of creditors.  Mr. Justice Shauck, after stating that the statute in terms makes every sale in bulk of stocks of merchandise absolutely void, and that it would sometimes be impossible to comply with all its requirements, said: "This act under the guise of preventing fraud in such sales, prohibits them altogether and thus places upon the enjoyment of property an important restriction which no public interest requires and which the constitution therefore forbids."

The Indiana statute declaring such sales fraudulent and void was upon various grounds held unconstitutional in Sellers v. Hayes, 163 Ind. 422, 72 N. E. 119.

In Young v. Com., 101 Va. 853, 45 S. E. 327, a statute which made the sale only prima facie evidence of fraud was held unconstitutional on the ground that the subject-matter of the legislation was not within the scope of the police power as it did not affect the health, morals, or safety of the community.

On the other hand, the statutes were held constitutional in Squire v. Tellier, 185 Mass. 18, 69 N. E. 312, 102 Am. St. 322; Neas v. Borches, 109 Tenn. 398, 71 S. W. 50, 97 Am. St. 851 (Wilkes, J., dissenting); McDaniels v. Connelly, 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947, 94 Am. St. 889.  See Eklund v. Hopkins, 36 Wash. 179, 78 Pac. 787;

Walp v. Mooar, 76 Conn. 515, 57 Atl. 277; Williams v. Fourth (Okl.) 82 Pac. 496. In the Oklahoma case the court said: "Statutes of similar import have had the consideration of other courts and been uniformly upheld and indeed in certain cases even though the prohibition is absolute and sales of this character are made utterly void and not as in the words of our statute, 'presumed to be fraudulent and void.'" The Maryland statute was approved without comment in Hart v. Roney, 93 Md. 432, 49 Atl. 661, and in Fisher v. Herrmann, 118 Wis. 424, 95 N. W. 392, the court declined to consider the constitutionality of the statute because the question was not properly before the court. See, also, State v. Artus, 110 La. An. 441, 34 South. 596.

The appellants contend that the property of a partnership is a trust fund for the payment of its debts. But this is true, if at all, only in a general sense and like other such generalities it has very little value.

The rule and its limitations are stated in the last edition of 3 Pomeroy, Eq. Jur. § 1046: "Extending the analogy still further, courts regard partnership property after an insolvency or dissolution of the firm and in the proceedings for winding up its affairs as a trust fund for the benefit of the firm creditors. * * * These statements may be sufficiently accurate as strong modes of expressing the doctrine that such property is a fund sacredly set aside for the payment of partnership and corporation creditors before it can be appropriated to the use of the individual partners or corporators and that the creditors have a lien upon it for their own security; but it is plain that no constructive trust can arise in favor of the creditors unless the partners or directors, through fraud or a breach of fiduciary duty wrongfully appropriate the property or acquire the legal title to it in their own names and thus place it beyond the reach of creditors through ordinary legal means."

The partners have the right to have the partnership property applied to the payment of partnership debts in preference to the debts of the individual members of the firm. This is an equitable right which under certain circumstances inures to the benefit of the firm's creditors. But the creditors have no lien upon the property. Lindley, Partnership, 373; Ex parte Ruffin, 6 Ves. Jr. 119. Their equity is a derivative one. It is not held or enforceable in their own right. Their equity or right to priority is dependent upon the equity of the individual partners. They are in effect subrogated to the individual equity of the partners,

and their equity can be made effective only when the partners are in a position to enforce it. Ex parte Ruffin, 6 Ves. Jr. 119; Ex parte Williams, 11 Ves. 4; Campbell v. Mullett, 2 Swanst. 551; Story, Partnership, § 97; 1 Story, Eq. Jur. § 57; Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370.

So long as the equity of the partner remains in him, that is, so long as he retains an interest in the firm as a partner, a court will allow the creditors of the firm to avail themselves of his equity. But if before the interposition of the court is asked the property has ceased to be the property of the partnership by a transfer to a third person the equities of the partners are extinguished and the derivative equities of the creditors are at an end. Francklyn v. Sprague, 121 U. S. 215, 7 Sup. Ct. 951, 30 L. Ed. 936. As said by Mr. Justice Strong in Case v. Beauregard, supra: "It is, therefore, always essential to any preferential right of the creditors that there shall be property owned by the partnership when the claim for preference is sought to be enforced." The rights of the creditors may, therefore, be defeated by an act of the partners which is not fraudulent. 2 White & Tudor, Lead. Cas. Eq. pt. 1, p. 392. Partnerships, like individuals, possess the jus disponendi. As said by Chancellor Walworth in Kirby v. Schoonmaker, 3 Barb. Ch. 46, 49 Am. Dec. 160: "The copartners certainly have the right to dissolve the partnership, and divide the property of the firm between them provided there is no intention of delaying or hindering their creditors in the collection of debts."

The authorities establish the rule that in the absence of fraud a partnership may sell and transfer the property of the firm and that the purchaser takes it free from any equities on the part of the simple creditors of the partnership. Arnold v. Hagerman, 45 N. J. Eq. 186, 17 Atl. 93, 14 Am. St. 712. That the transfer was made to a corporation which was organized by the partners for the purpose of carrying on the business, is not in itself evidence of fraud. Shumaker v. Davidson, 116 Iowa, 569, 87 N. W. 441; Kingman v. Mowry, 182 Ill. 256, 55 N. E. 330, 74 Am. St. 169; Coaldale v. State Bank, 142 Pa. St. 288, 21 Atl. 811; Bristol v. Jonesboro, 101 Tenn. 545, 48 S. W. 228; Densmore v. Shong, 98 Wis. 380, 74 N. W. 114; In re Robertshaw Mnfg. Co. (D. C.) 133 Fed. 556. Such a transaction may be fraudulent but it must be judged by its own facts. Benton v. Minneapolis Tailoring &

Mnfg. Co., 73 Minn. 498, 76 N. W. 265; Hinkley v. Reed, 182 Ill. 440, 55 N. E. 337; Allen v. French, 178 Mass. 539, 60 N. E. 125.

In Sayers v. Texas, 78 Tex. 244, 14 S. W. 578, the firm conveyed all their properties to a corporation under an agreement among the partners that each should hold stock in the corporation in proportion to his interest in the partnership. There were no other stockholders and only one partner ever received a certificate of stock. The court said: "The contention of appellant is that because this was a mere conversion of the partnership into a corporation, and because nothing was paid for the property except the stock in the corporation, the conveyance of the land is to be deemed voluntary and fraudulent in law as against existing creditors. To this proposition we do not assent. The creation of the corporation was authorized by law and upon its formation it became an artificial being distinct from its incorporators. Its stock was a valuable consideration for property transferred to it and such transfer was not therefore per se fraudulent as against existing creditors even though it had been shown that the partnership did not retain sufficient property to satisfy its debts. The stock received by them was not placed beyond the reach of creditors."

It will be noted that the contest in the present case is not between the creditors of the partnership and the creditors of the individual partners. It is between the creditors of the partnership and the creditors of its successor to which the partnership property was transferred. These new creditors may well be regarded as on a higher plane than the creditors of individual partners. In Francklyn v. Sprague, supra, it is held that a corporation formed by, and consisting of, the members of a partnership for the purpose of conducting the partnership business and taking the partnership property takes the latter free from partnership equities. Mr. Justice Bradley said: "The argument that the corporation, being the creature of the partners, was not a bona fide purchaser, and must be considered as having taken the property subject to all partnership equities against it is not a sound one. The constitution of the corporation and the transfer to it of the property were authorized by law, and were intended to settle and extinguish these equities and to place the concern on a new footing; and the very parties entitled to equities were the ones who organized the corporation, and made the conveyance to it. Besides, it is not the corporation alone which is con-

cerned in the transfer, but the creditors who trusted it after it was formed. They, or at least the great mass of them, certainly stand in the position of bona fide claimants against its property and assets." The fact that the partnership was insolvent at the time of the transfer has an important bearing upon the issue of fraud. It is not, however, conclusive, and it does not deprive the parties of the right to show if they are able to do so that the transfer was made for a good and ade-·quate consideration. Nor does it create in itself a lien for the partnership creditors independently of the equity of the partners to have the partnership property properly applied. 1 Bates, Partnership, § 560; Allen v. Center Valley, 21 Conn. 130, 54 Am. Dec. 333; Case v. Beauregard, supra.

We are thus brought back to the question whether this transfer to the corporation was made with the intent to defraud the creditors of the partnership. The court has found that the sale and transfer were made in good faith without fraudulent intent, and the evidence is amply sufficient to sustain this finding.

The claim, that no consideration was paid because no stock was ever issued by the corporation, is without merit. It appears that the certificates of stock were issued by the Pennock Mercantile Company before a legal incorporation was effected. After incorporation the stock which had been thus irregularly issued was by all parties treated as the stock of the corporation. It had been issued in contemplation of incorporation, and after incorporation the acts of the incorporators were ratified by the course which all parties pursued with reference thereto. Having recognized the parties as stockholders the corporation could not thereafter have been heard to deny that they were stockholders. Nor could they have avoided liability as stockholders after having acted and received benefits as such. Under such circumstances, the creditors of the partnership cannot be heard to question the legality of the stock. The order directing the distribution of what remained of the funds after the payment of the claims of the creditors of the corporation was proper under the terms of the trust agreement entered into by the parties.

The order appealed from is affirmed.