## WARNER et al. v. GRAFTON WOODWORKING CO. et al.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1913.)

No. 1,161.

BANKRUPTCY (§ 140*) — PARTNERSHIP — TITLE OF TRUSTEE — PROPERTY OF ANOTHER PARTNERSHIP CONTRIBUTED BY PARTNERS.

Bankrupt, a partnership, was formed by three persons for the purpose of executing a certain contract. One of the partners contributed a substantial sum in cash to the capital, and the other two contributed machinery and material owned or purchased by another partnership in which they were the sole partners. The evidence did not show that the last-named partnership was at the time insolvent or that the transfer of the property was not made in good faith. On the filing of the petition such property came into the possession of bankrupt's receiver. *Held* that, under the established rule that in the absence of fraud a partnership may make a valid sale and transfer of its property as against general creditors, the property passed to the bankrupt and was subject to its debts as against the trustees in bankruptcy of the firm which formerly owned it and its members.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Philippi, in Bankruptcy; Alston G. Dayton, Judge.

In the matter of the Charles A. Sims Company, a partnership, bankrupt. From an order denying their petition to recover certain property, George Warner, Elmer E. Herr, and Leon Rosenbaum, trustees in bankruptcy of Charles A. Sims and John Read Pettit, trading as Charles A. Sims & Co., interveners, appeal. Affirmed.

Arthur S. Dayton, of Philippi, W. Va., and William A. Carr, of Philadelphia, Pa. (W. Horace Hepburn and Sidney L. Krauss, on the brief), for appellants.

Hugh Warder and J. W. Robinson, both of Grafton, W. Va., for appellees.

Before PRITCHARD, Circuit Judge, and KELLER and CONNOR, District Judges.

CONNOR, District Judge. The facts apparent upon the record are: Chas. A. Sims and John Read Pettit, of Philadelphia, were, on and for many years prior to March 22, 1910, engaged in the business of railroad construction under the firm name and style of Chas. A. Sims & Co.; their place of business being Philadelphia, Pa. The firm had, for many years, conducted an extensive business, covering a large territory, including several states.

On March 22, 1910, said Chas. A. Sims, John Read Pettit, together with Charles E. Stewart and Roger B. Emmons, entered into a contract with the Baltimore & Ohio Railroad Company for the construction and completion of certain work at Grafton, W. Va.

On March 24, 1910, the said Chas. A. Sims, John Read Pettit, and Roger B. Emmons (said Stewart having retired from the contract)

entered into a written agreement, reciting that they had made a contract with the said railroad company and, for the purpose of performing the same, "become partners under the firm name and style of Chas. A. Sims Company, not incorporated, with the principal place of business at Grafton, West Virginia, and that a sign be erected on the work to the effect that the performance of this contract is being completed by said concern, and all letter heads, etc., bearing the name of said concern, and that the bank account be carried in the name of said concern." Provision was made respecting the amount of capital to be furnished by each of the parties; other provisions not material or relevant to the matters in controversy are found in the written agreement.

On January 4, 1911, the parties executed a second agreement, reciting the first, and further reciting that the said Sims and Pettit had failed to carry out their part of the obligations assumed by them, and that said Emmons had contributed the amount assumed by him, that, by reason of these and other matters set out, the said copartnership was dissolved and the contract with the Baltimore & Ohio Railroad Company assigned to said Emmons, and "that he should have and retain as his own property all the machinery, tools, implements, materials, lumber, now at Grafton, and that the said Sims and Pettit sold and transferred to said Emmons all of said property," etc.

On the 24th day of April, 1911, the Grafton Woodworking Company, Kane-Keyser Hardware Company, and the Bush Lumber Company, alleging that they were creditors of said firm of C. A. Sims Company, in amounts aggregating more than $1,000, filed their petition in the District Court of the United States for the Eastern District of West Virginia, alleging that said firm of Chas. A. Sims Company and the individual members thereof were insolvent, and that, within four months prior thereto, they had committed acts of bankruptcy, the character of which is not material at this point, and prayed that said copartnership and the individual members thereof be adjudged bankrupts, that such proceedings be had in the premises as were provided by the act, etc.

On said 24th day of April, 1911, the petitioning creditors also filed a petition praying that a receiver be appointed to take into his possession the property of said copartnership. Pursuant to said petition, L. B. Brydon was appointed receiver and directed to take said property into his possession, and hold the same subject to the further orders of the court. The said Chas. A. Sims, John Read Pettit, and Roger B. Emmons filed separate answers to the petition.

On June 10, 1911, an order was passed by the court, referring certain questions, presented by the petition and answers, to O. E. Wycoff, Esq., referee and special master, who duly reported that said Emmons was a resident of Grafton, W. Va., on the date of the filing of the petition; that the Chas. A. Sims Company was a partnership with its principal office at Grafton, W. Va., formed between said Chas. A. Sims, John Read Pettit, and Roger B. Emmons, for the purpose of performing the contract entered into with the Baltimore & Ohio Railroad Company; that the partnership was dissolved and the property transferred to said Emmons, who, thereafter and within four months

of the filing of the petition, made certain transfers of the property, etc. This report was filed June 24, 1911.

On August 2, 1911, George Warner, Elmer E. Herr, and Leon Rosenbaum, trustees in bankruptcy of the said Chas. A. Sims and John Read Pettit, trading under the firm name and style of Chas. A. Sims & Co., of Philadelphia, were permitted, upon their application, to intervene in said bankruptcy proceeding and, pursuant thereto, filed their petition in which they alleged that, on January 25, 1911, the said Chas. A. Sims & Co., and the individual members thereof, were adjudged bankrupt by the District Court of the United States for the Eastern District of Pennsylvania, and that interveners were appointed their trustees. They alleged that the said Chas. A. Sims & Co. were the real parties to the contract with the Baltimore & Ohio Railroad Company for the performance of the work at Grafton, W. Va.; that Emmons was a secret partner, having no real interest therein; that, at the time of making said contract, Chas. A. Sims & Co. were wholly insolvent; that, while so insolvent, they transferred a large quantity of machinery belonging to said firm, consisting of one-third of their entire plant and assets at Philadelphia, to Grafton; that Sims and Pettit held themselves out to the public, and those with whom they dealt, in purchasing the plant and machinery for doing the work at Grafton under the said contract, as Chas. A. Sims & Co.; that said Emmons was not known to the public nor to those persons with whom the said Chas. A. Sims Company had dealings and of whom they made purchases, as a partner in performing said contract; that large purchases of material and machinery were made by said Chas. A. Sims & Co. for use in the completion of said work at Grafton. They allege that the name of Emmons was "illegally concealed from the public," etc. These, and allegations of similar import, are repeated with more definite specification. The interveners, for the reasons set forth, ask that the machinery and fixtures in the possession of the receiver at Grafton be delivered to them as trustees of Chas. A. Sims & Co.

The petitioning creditors, appellees herein, answered, denying the material allegations of said petition. They allege that they dealt with Sims, Pettit, and Emmons, doing business at Grafton, under the firm name and style of Chas. A. Sims Company, sold and furnished them goods, lumber, hardware, etc., which were sold for, and were used by, them in performing the work called for in the contract with the Baltimore & Ohio Railroad Company. Whereupon, the said C. E. Wycoff, Esq., as special master, by direction of the court, heard the testimony offered by the respective parties in support of their contentions, and on November 5, 1911, reported his conclusions of fact and law, together with the testimony taken by him. He found: That the Chas. A. Sims Company, at the time of filing the petition herein, was insolvent. That Chas. A. Sims and John Read Pettit, trading as Chas. A. Sims & Co., of Philadelphia, were individually and as copartners adjudged bankrupt by the District Court for the Eastern District of Pennsylvania, on January 25, 1911, and that interveners were duly elected their trustees. That said Sims, Pettit, and Emmons, and one Chas. E. Stewart, some months prior to the adjudication in bankruptcy of said Sims and Pettit,

under the firm name of Chas. A. Sims & Co., of Philadelphia, entered into a contract with the Baltimore & Ohio Railroad Company at Grafton, W. Va. That subsequent thereto said Stewart retired from the firm, and on the 24th day of March, 1910, and after the retirement of said Stewart, said Sims, Pettit, and Emmons entered into a written agreement, forming a partnership under the firm name of Chas. A. Sims Company, for the execution and performance of said contract. That, by the terms of said agreement, Sims and Pettit were to contribute in money and machinery the sum of $100,000, and Emmons agreed to, and did, contribute $25,000 to the capital of said firm. In pursuance of the agreement, said Sims and Pettit shipped from Philadelphia to Grafton machinery which was the property of Chas. A. Sims & Co. That an "uncertain but considerable part" of the amount contributed by Emmons was deposited in the bank at Grafton to the credit of Chas. A. Sims Company. He says:

"The evidence introduced by the intervening trustees for the purpose of showing insolvency on the part of Chas. A. Sims & Co. at the time of the contract of partnership between Sims, Pettit, and Emmons, I consider insufficient. The evidence shows the transfer of machinery by Sims and Pettit to have been bona fide. * * * I further find and report: That the firm of Chas. A. Sims Company, composed of Chas. A. Sims, John Read Pettit, and Roger B. Emmons, was, and is, not a secret partnership, and that its existence was not concealed. That the partnership of Chas. A. Sims Company is separate and independent of the firm of Chas. A. Sims & Co., of Philadelphia, and that the property heretofore sold by the receiver herein were assets of the firm of Chas. A. Sims Company, not incorporated."

The interveners filed a number of exceptions, all of which were overruled by the judge and the findings of the master sustained. The firm of Chas. A. Sims Company was adjudged bankrupt and an order of reference made. The petition of the interveners that the assets and property in the possession of the receiver be transferred to them was denied—the petition was retained until it was ascertained "whether any surplus, after the payments of the debts, will remain of the assets of the Chas. A. Sims Company due to Chas. A. Sims and to John Read Pettit, as members of said firm." To this decree the interveners made a number of assignments of error, and appealed.

The merits of the appeal depend, to a very large extent, upon the question whether the special master has found the facts correctly. The reasons, given by the learned judge below, for sustaining the master's conclusions, are very conclusive to our minds. Eliminating much of the testimony, not relevant to the determinative questions in controversy, there is but little contradiction. That a partnership was formed between Sims, Pettit, and Emmons, for the purpose of performing the work included in the contract with the Baltimore & Ohio Railroad Company at Grafton, under the firm name and style of the Chas. A. Sims Company, is shown by the written agreement executed by them, the validity of which is not controverted. That Emmons contributed the sum of $25,000 to the capital stock is established by uncontradicted testimony. That Chas. A. Sims and John Read Pettit contributed a portion of the amount assumed by them in machinery, belonging to Chas. A. Sims & Co., of which firm they were the only members, and

that much of the material furnished by them was purchased by them as members of the firm of Chas. A. Sims & Co., and on the credit of that firm, could not operate to change the legal status of the firm of Chas. A. Sims Company, of Grafton, or to vest its title in the Philadelphia firm. The master finds that the firm of Chas. A. Sims & Co. furnished the machinery, etc., to the firm of Chas. A. Sims Company in good faith, and that the evidence does not show that the Philadelphia firm was insolvent at the time of doing so. As he very correctly says, the creditors of Chas. A. Sims & Co. had no lien on the partnership property, and there is no reason, either in law or equity, which forbids the sale of it to another partnership of which the individual members are also members. We avail ourselves of the industry of the master in his investigation of the authorities:

"There can be no doubt that members of a partnership have the power to convert the property of a firm into separate property of one or more of the individual partners; and that such conversion, unless fraudulent, will bind not only themselves, but all other persons, whether creditors or purchasers." 30 Cyc. 436.

In Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370, the right of creditors to have partnership property subjected to the payment of their debts, as a trust fund, is considered. Mr. Justice Strong says:

"If, before the interposition of the court is asked, the property has ceased to belong to the partnership, if by a bona fide transfer it has become the several property either of one partner or of a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end. It is therefore always essential to any preferential right of the creditors that there shall be property owned by the partnership when the claim for preference is sought to be enforced." Francklyn v. Sprague, 121 U. S. 215, 7 Sup. Ct. 951, 30 L. Ed. 936.

The case of Thorpe v. Pennock Mercantile Co., 99 Minn. 22, 108 N. W. 940, 9 Am. & Eng. Ann. Cas. 229, is in point. Three persons, being partners, conducting a mercantile business, found that the firm was insolvent. They entered into an agreement with two other persons to form a corporation, the partners contributing the property of the partnership, the others contributing money, to complete the capital stock. The corporation became insolvent, and its property was placed in the hands of a trustee for settlement, etc. The creditors of the partnership claimed the right to share with the creditors of the corporation in the distribution of the corporate property. Mr. Justice Elliott said:

"The authorities establish the rule that, in the absence of fraud, a partnership may sell and transfer the property of the firm, and that the purchaser takes it free from any equities on the part of the simple contract creditors of the partnership. * * * That the transfer was made to a corporation which was organized by the partners for the purpose of carrying on the business is not in itself evidence of fraud." Sayers v. Texas Land Co., 78 Tex. 244, 14 S. W. 578.

There is considerable evidence in the record that, during the existence of the firm of Chas. A. Sims Company, the name of Chas. A. Sims & Co. was used by the parties, and it is quite probable that some persons dealt with it under the impression that such was its correct name, that such persons sold goods to Chas. A. Sims & Co., which went

to and were used by Chas. A. Sims Company, that, as said by the learned judge below:

"With the absolute carelessness characteristic of wholesale dealers, having things to sell, the firms, supplying these supplies and machinery, took no precautions to ascertain under what terms and condition this Grafton contract was either taken, or being accomplished."

This, and other facts appearing in the record, tend to show that those dealing with Chas. A. Sims and John Read Pettit, trading as Chas. A. Sims & Co., honestly thought this firm was performing the railroad contract; but the special master finds, and the testimony amply sustains him, that in truth the work was being done by, and that the petitioning creditors dealt with, a separate entity, the Chas. A. Sims Company. While we should follow the well-settled rule that the finding of fact by the master, sustained by the judge, will not be disturbed, except for manifest error, or unless it appears that they are clearly wrong, we are of the opinion, from a careful examination of the record, that they are correct. Very much of the well-prepared brief, as much of the able and interesting argument before us, is dependent upon maintaining the proposition that there was a secret partnership between Sims, Pettit, and Emmons; that there was a fraud on their part. The master finds otherwise, and we concur with the learned judge below in sustaining his finding. Many of the authorities, cited in the brief, become therefore inapplicable. While no good purpose could be served by quoting the evidence at length, it is of interest to note the fact that Emmons invested in this partnership $25,000; that the sign on the door of the office was "Chas. A. Sims Company"; that the bank account was kept in that name, although the correspondence on the part of the bank was with "Chas. A. Sims & Co." An examination of the bills and other exhibits indicate that the parties were not always observant of the distinction, but we think that the evidence shows that the dealing by the petitioning creditors were with Chas. A. Sims Company. The sole question presented upon this record is whether the property of Chas. A. Sims Company, in the possession of the receiver, or its proceeds, shall be delivered to the petitioning interveners, for the purpose of administering it in the proceedings in the District Court of the United States for the Eastern District of Pennsylvania, as the property of Chas. A. Sims & Co. For the reasons given by the learned district judge, in which we concur, this cannot be done, without disregarding the rights of the creditors of Chas. A. Sims Company.

Without pursuing the discussion further, we are of the opinion that the decree of the District Court should be affirmed. It will be so certified to the end that further proceedings may be had in this cause in accordance with said decree and this opinion.

Affirmed.