No. 72.—S. F. MILLER, garnishee, *et al.* plaintiffs in error, *vs.* CONKLIN & Co. and others, defendants.

[1.] An assignment by a firm in insolvent circumstances, of all [their assets, for the use and benefit of such creditors as should, within ninety days, file their claims with the assignee and release the said firm from all liability therefor, is illegal and void as against objecting creditors, in the State of Georgia.

Garnishment, in Macon Superior Court.    Decided by Judge POWERS, September Term, 1854.

This was a garnishment issued to S. F. Miller as garnishee, on a judgment of Conklin & Co. *vs.* Collins, Ashburn, McKenzie & Co.    The garnishee returned that he had no effects, stating that he had received from defendants certain assets under

a deed of assignment, for the benefit of creditors.   This deed, dated Dec. 28th, 1852, transferred to Miller all the assets of Collins, Ashburn, McKenzie & Co. for the use and benefit of all such of their creditors as should, within ninety days, file their claims with the assignee, and release the said firm from all liability therefor; said assignee then to collect the assets and divide the same equally, *pro rata*, among the creditors acceding to the arrangement.   The assignors relinquished all claim to or interest in said assets, and authorized the assignee to use their names for the purpose of collections.   The garnishee also excepted to the jurisdiction of the Court over the case, on the ground that the matter was properly cognizable in Equity, and was not a subject for process of garnishment.

The amount in the hands of the garnishee, collected under this assignment, was admitted.   The Court over-ruled the points made in the answer, held the assignment void, and gave judgment against the garnishee, to be paid in three months. And on this decision error is assigned.

MILLER & HALL, for plaintiffs in error.

COOK & MONTFORT, for defendants in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] The point now presented has never been expressly adjudicated in this State.

In England, where legal policy permits and encourages bankrupt laws, assignments with conditions of release are upheld by the Courts.

We find a considerable conflict of opinions on the subject, when we look to the decisions in the United States.   In some, such assignments are supported; but in the majority, where the question has been made, they have been held illegal. Where they have been sustained, it will be found, we think, that the first decisions on the subject were made in the earlier days of the Republic, when our policy, legal and commercial,

had but slightly diverged from that of Great Britain.   This. seems to be true of Virginia, Pennsylvania and South Carolina. (1 *Amer. Lead. Cas.* 83.)   It is also true of Massachusetts, we believe.   (*Id.* 84.)

The case of *Bromshear vs. West,* (7 *Pet.* 609) which was a decision by Chief J. *Marshall,* sustains the same doctrine. But it is put upon the authority of the Pennsylvania decisions, (being made in a Pennsylvania case) and that distinguished person, in making the decision, expresses " doubt and regret," and condemns the morality of such a transaction.

So in *Halsey et al. vs. Whitney,* (4 *Mass.* 207, 227, 230) such an assignment was supported by Mr. Justice *Story,* upon " the supposed opinions of the profession in Massachusetts" : but he, too, condemns the principle on which it is based.

In the State of Alabama, it was decided (two Judges dissenting) in an early case, that such an assignment was valid ; but we are told, that that decision has been reluctantly adhered to. on the ground of mere authority.   (1 *Amer. L. C.* 84.)

A different rule prevails in New York, Connecticut, Ohio,. Illinois, Missouri, Mississippi and North Carolina.   And in Maine and New Hampshire, Statutes have been passed for the purpose of requiring equality of distribution among creditors..

Now, if unassisted by our own legislation, and left to decide between these conflicting views of Courts, we think we should not have much difficulty in arriving at a satisfactory conclusion.. In our opinion, the arrangement gives to the debtor an advantage which is not consistent with a pure morality or accurate justice—an advantage which enables him, in the language of Judge *Sutherland,* in *Grover vs. Wakeman* (11 *Wend.* 200) "to operate upon the fears of his creditors and coerce them into his own terms."   It proceeds, in short, on principles which have been condemned by such men as *Marshall,* and *Story,* and *Kent,* even while the two first have been compelled to sustain such an assignment in particular cases, by reason of precedent applicable to these cases.

We have no such precedent in our State, and are free to adopt that which we deem the more wholesome rule, if we were

compelled to choose between these conflicting views of Courts, and to determine the question upon principle alone.

Some of the cases which maintain the legality and propriety of such an assignment, have gone upon the idea that the debtor has the right, *bona fide*, to prefer one or more of his creditors, and pay the debts due to them with his property. On this principle Ch. *Johnson* (Job Johnson) of South Carolina, puts the case in *Niolan vs. Douglass*, (2 *Hill Ch. R.* 451) perhaps as strongly as it can be found elsewhere. He sets out by granting the debtor's right to prefer one creditor over another, and says, "then if it would have been no fraud on him" (the creditor) "to prefer others over him with or without conditions, is he defrauded by giving him an opportunity to participate with them? an opportunity which it would have not been fraudulent in Johnson" (the assignor) "to have withheld from him?"

This is the whole strength of the argument. To our minds, it is not satisfactory. The law gives to the creditor the right to prefer, necessarily. And this is advantage enough. Our Statute of 1818, sanctions this right expressly. Let him use this advantage, and prefer any creditor he pleases, and pay away his property to such creditor, as he has the right to do in good faith. But let him not use the threat of doing this, as a sort of *moral* duress, by which he may coerce his creditors into an agreement which they would not otherwise approve. Lend him not the hand and the strong arm of the law in doing this.

So that, if there were nothing else to aid us in taking sides on this question, (so much mooted in this country,) whether or not such an assignment was of a character " to hinder and delay creditors;" therefore, as contrary to the 13 *of Elizabeth*, void and illegal in our State ; these considerations would influence and control our views on this subject.

But there is something else; and that, in our opinion, is the stress of our own legislation. We not only have no bankrupt laws, but our policy and the public sentiment of our people are opposed to them. And what is such an assignment but a

VOL XVII.--55

private Bankrupt Law? a Bankrupt Law executed by the debtor for his own benefit! Does he not thus release himself from his debts, by compelling his creditors to take what he can pay?

Our Statute of 1818, if not in express terms, or by necessary implication, yet, in its whole scope, purpose and spirit, prohibits such an assignment. Like the Statutes of Maine and New Hampshire, it was intended to ensure "equality of distribution among creditors;" for it declares the assignment void, if "any creditor shall or may be excluded from an equal share of the estate so assigned," &c. And a *proviso* declares, that nothing contained in this Act shall prevent any person from selling or disposing of any part or the whole of his, her or their estate, so the same be free from any trust for the benefit of the seller, or any person appointed by him." Thus affording a key to the mind of the Legislature, and indicating how they intended this equal distribution to be made, viz: on such terms as should be free from any *trust for the debtor's benefit*. But is an assignment with condition of release, such a disposition of the property as is without a trust for the debtor's benefit? If not, it is contrary to the scope and spirit of this Statute, if not to its letter.

Our Legislature has also manifested its abhorrence of unequal assignments, by its penal provisions (treating the same as a felony) against insolvent banks making assignments in contemplation of insolvency, which are not for the benefit of all the creditors and stockholders.

Of course this decision goes no further than the case made. We do not undertake to say that such an assignment would not be binding on the creditors, if they were all to accept, and no one was injured by it; nor as between the parties, the debtor and the assignee.

Judgment affirmed.