## NEAS *v.* BORCHES.

### (*Knoxville.* September Term, 1902.)

**CONSTITUTIONAL LAW. Police power. Class legislation.**

This case involves the construction of the act of the general assembly (Acts of 1901, ch. 133), providing that sales in bulk of stocks of merchandise or any portion thereof, otherwise than in the ordinary course of business, shall be presumed to be fraudulent and void as against the creditors of the seller, unless the parties make a detailed inventory showing quantity and cost price to the seller of the goods sold, at least five days before the sale, and unless the purchaser makes diligent inquiry as to the names of the creditors of the seller and gives them five days' notice stating cost price and price to be paid.

HELD: 1st. Said act is a valid exercise of the police power of the State. 2d. That it is not void as arbitrary class legislation. 3d. That it does not take away the property of the citizen, but only regulates sales of merchandise in such way as to prevent fraud.

---

### FROM COCKE.

---

Appeal in error from the Circuit Court of Cocke County. W. R. HICKS, Judge.

H. N. CATE and B. W. HOOPER, for Neas.

W. J. and W. D. McSWEEN, for Borches.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is an action of replevin, brought before a justice of the peace, for 67 pairs of shoes, valued at $67, levied upon by attachment in the hands of Neas, sheriff, in favor of Donaldson Bros.

On appeal to the circuit court the cause was heard by the judge without a jury, and there was judgment for the plaintiffs, Borches & Co., and Donaldson Bros. appealed to this court, and assigned errors.

It appears that Driscoll & Co. were engaged in business as retail merchants at Given, Tenn., and while so engaged became indebted to Borches & Co., of Knoxville, and to Donaldson Bros., of Morristown, both being wholesale merchants, and both having sold goods to Driscoll in the course of his business. Toward the last of August, 1901, Cureton, traveling salesman for Borches & Co., demanded payment of the amount due that firm from Driscoll & Co., and, it not being paid, proceeded to buy from Heritage, the clerk of Driscoll & Co., the entire stock of Driscoll & Co., except a few odds and ends of no material value. This was done without any notice by the seller or purchaser to the creditors of Driscoll & Co. It does not appear that there was any fraud in the sale, nor that it was contrary to the wish of the firm, nor that it was not approved and ratified by the firm. On the contrary, Heritage says without objection that he had authority to sell the goods and pay the debts of the firm, and he sold for the purpose of paying the debt of Borches & Co.; and

Driscoll & Co. are not complaining or calling the sale in question. Thereupon Donaldson & Co. caused attachment to be levied upon 67 pairs of shoes embraced in the sale to Borches & Co., and which had been delivered to them. Borches & Co. replevied the shoes, and claim to hold the same under their purchase. The contention in the case is that the purchase was void under the provisions of Acts 1901, ch. 133. The trial judge held this act unconstitutional, and that Driscoll & Co., through their agents, had made a valid sale. The act in question is chapter 133 of the Acts of 1901, and is as follows:

Caption: "An act to provide the terms upon which sales in bulk of stocks of merchandise, or of any portion thereof otherwise than in the ordinary course of trade may be made.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that a sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in bulk, shall be presumed to be fraudulent and void as against the creditors of the seller, unless the seller and purchaser shall at least five days before the sale make a full detailed inventory, showing the quantity, and so far as possible, with the exercise of a reasonable diligence, the cost price to the seller of each article to be included in the sale; and unless such purchaser shall at least five days be-

fore the sale, in good faith, make full, explicit inquiry of the seller as to the names and places of residence or place of business of each and all of the creditors of the seller, and unless the purchaser shall at least five days before the sale, in good faith, notify or cause to be notified personally or by registered mail, each of the creditors of the seller of whom the purchaser has knowledge, or can, with the exercise of reasonable diligence, acquire knowledge, of the purposed sale and of the cost price of the merchandise to be sold, and the price proposed to be paid therefor by the purchaser; and the seller shall at least five days before such sale, fully and truthfully answer in writing each and all of said inquiries; provided, however, no suit shall be brought or maintained by any creditor against such seller or purchaser within five days after he receive notice from any source of the intended sale and purchase, and any suit so brought shall be dismissed at the cost of the plaintiff in the case.

"Sec. 2. Be it further enacted, that whenever a notice as provided in section 1 of this act is sent by registered mail, the creditor of person to whom the notice is mailed shall be presumed conclusively to have received the notice, and the time of the notice shall be dated from the time of the mailing and registration of said notice."

It is said, in the first place, that the act is class legislation, in that it applies alone to merchants dealing in merchandise, and not to other persons, such

as farmers, stock dealers, manufacturers, traders, and persons engaged in other business than the sale of merchandise. Admitting this, in reply it is said that the statute is a mere regulation of the mercantile business, designed to secure to creditors of merchants a just participation in the distribution of the assets of such merchants, and to prevent fraudulent performances and practices by them, and is a valid exercise of the police power of the State.

The majority of the court is of opinion that the act in question is valid and constitutional; that it was intended to prevent the practice of fraudulently selling out goods to the injury of creditors by merchants; that it is merely a regulation of the business of merchandising; that it is not class legislation, and that the limitation of the act to merchants is not arbitrary classification; that it does not take away the property of the citizen, but only regulates the sales of merchandise in such manner as to prevent fraud. The result is that the judgment of the court below must be reversed, and, it being a replevin suit before a justice of the peace, judgment must be rendered for twice the value of the goods replevied, to-wit, the sum of $134, and all costs, in favor of the defendants, and against the plaintiff, which judgment may be discharged by a return of the shoes.

### DISSENTING OPINION.

Mr. Justice Wilkes delivered the following dissenting opinion.

I do not concur in the opinion of the majority, but

Neas v. Borches.

think, on the contrary, that the act is clearly vicious class legislation, and that it takes away the value of the merchant's property by trammeling its sale and disposition, and its provisions are not justified or warranted by the exercise of the police power of the State.

It has been said that it is difficult to define what objects fall within the exercise of the police power, and that this is a broad and comprehensive term, and embraces any measure affecting the public health, public morals, public safety, public welfare and other matters. But whenever it is called into exercise it is in aid or regulation of some matter of a public or *quasi* public character, or that affects and touches the public as a body politic. *Mayor, etc., of Knoxville* v. *Knoxville Water Co.,* 107 Tenn., 647 (64 S. W., 1075).

But I am of opinion that the police power can not be so extended as to prevent the disposition of property in any manner the owner may see proper, so that such disposition does not endanger the public safety, peace, health or happiness. It is to be observed that this act embraces all sales of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, no matter whether the seller be solvent or insolvent, and no matter whether done in actual good faith or for a fraudulent purpose, and, unless notice is given to all the creditors of the seller, the sale will

be presumed to be fraudulent, and held to be void. The practical effect is to compel every merchant, whether solvent or insolvent, to obtain the consent of all his creditors before he can close out his business for any purpose, or at any price. This, it is evident, must cause in some cases great oppression, and in every case will hamper and hinder the merchant in the disposition of his property.

The constitution, art. 1, sec. 8, provides that "no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." The effect of this act is not to take away the merchant's property, it is true, but it is to restrict and burden it in such manner as to prevent its free transfer and the realization of its full value. It takes away one element of its value, to wit, the right to use and legitimately dispose of it. As is said in *Third Nat. Bank* v. *Divine Grocery Co.*, 97 Tenn., 611 (37 S. W., 390): "To take from property its chief element of value, and to deny to the citizen the right to use and transfer it in any proper and legitimate manner, is as much depriving him of his property as if the property itself were taken."

The object and purpose of the act is, no doubt, to prevent fraudulent sales of an insolvent merchant's property, or such sales, when designed to give preference to one or more creditors; but the act is not con-

Neas v. Borches.

fined to such ·cases, either in its caption or body. While the equal or equitable distribution of a failing debtor's property, and especially that of a failing merchant, may be a laudable purpose, and one which the general assembly has by more than one act endeavored to secure, still it can not be done at the expense of a violation of the fundamental law of the land. No good reason can be given why merchants should be trammeled and restricted in the sale of their goods, when farmers, traders, manufacturers and other dealers have the unrestricted right to sell when they please, provided it is done in good faith. Nor is there any good reason why such a sale should, in the case of a merchant, be presumed to be fraudulent, when in the case of other dealers the presumption is in favor of good faith, and proof is required to show fraud. Nor is there any good reason to restrict the merchant who is solvent from making sale of his goods, as he may deem advisable, in order to prevent the insolvent merchant from exercising the same option and privilege. The sale of merchandise is no more affected by a public use than is the sale of farm products, or manufactured articles, or live stock, or the dealing in any commodity.

The power to regulate contracts made by merchants is not similar to that exercised to prevent nuisances, or the sale of liquors, or sales made in the nighttime under circumstances that indicate crime or evasion of law; nor is it similar to the power exercised to

prevent extortion by railroads, waterworks, street car companies, elevators, and other enterprises, more or less affected by a public use; but it is simply the regulation of contracts between individuals, throwing a restriction around trade and commerce, which can not be done under the guise or authority of the police power.

I am of opinion that the act in question is not only vicious class legislation, but that it deprives a man of his property without due process of law, by restricting its free sale and disposition, and is contrary to the law of the land, and is therefore unconstitutional and void.