[No. 4808.   Decided December 29, 1903.]

WILLIAM FITZ HENRY, *Respondent,* v. LEWIS H. MUNTER
*et al., Respondents,* and THOMAS MATTISON,
*Intervenor, Appellant.*[1]

APPEAL—RECORD—STATEMENT OF FACTS—REVIEW OF CONCLUSIONS OF LAW. A statement of facts is not necessary where the only question for review is whether the conclusions of law are justified by the findings of fact.

SALES—STOCK OF GOODS IN BULK—PRIVATE SALE OF BALANCE AFTER AN AUCTION. Where a storekeeper commenced selling her stock of dry goods and notions at auction January 20, realizing $170 therefrom, a private sale January 23, of substantially all the balance for $307, is a sale of a stock of goods in bulk, and void if no sworn statement of the vendor's creditors is given as required by Laws 1901, p. 222.

SAME—DUTY TO DEMAND LIST BEFORE PAYMENT—PURCHASER AS TRUSTEE—DISTRIBUTION OF PURCHASE MONEY. Laws 1901, p. 222, making it the duty of a vendee of a stock of goods in bulk to demand a list of the vendor's creditors before payment of the purchase price, etc., makes the debtor's goods a trust fund, and the vendee a trustee, for all the creditors; and where the list is not given upon demand, and the purchase price is paid into court,

[1]Reported in 74 Pac. 1003.

the funds are to be distributed *pro rata* to all the creditors who are parties to the suit.

Appeal from a judgment of the superior court for Pierce county, Snell, J., entered June 3, 1903, upon findings in favor of the plaintiff after a trial before the court without a jury, dismissing intervenor's complaint interposed as a creditor to secure a distribution of the proceeds of a sale of merchandise in bulk. Reversed.

*C. M. Easterday* and *Thomas Mattison,* for appellant.

*Fremont Campbell* and *E. E. Rosling,* for respondents.

DUNBAR, J.—The facts found by the court are substantially as follows: That prior to the 20th day of January, 1903, defendant Sarah Hirschfield was conducting in the city of Tacoma a drygoods and notion store, in the ordinary course of trade, and had been so conducting the same for some time prior thereto; that, in accordance with a certain notice which was inserted in the Tacoma Daily News, she commenced selling her goods at auction on the 20th day of January, through plaintiff William Fitz Henry, as her auctioneer, and continued said auction sale until the 23d day of January, 1903, at which time Mr. Munter, of the firm of Munter & Johnson, defendants herein, proposed to said Sarah Hirschfield to take the balance of the stock then unsold, and to pay her therefor the sum of fifty cents on the dollar, invoice price; that Mrs. Hirschfield accepted said offer and said auction sale closed, and that evening, as per their agreement, they commenced taking the inventory of the balance of goods then unsold, and completed the same that night, and said Munter & Johnson removed said goods to their place of business in Tacoma; that plaintiff William Fitz Henry claims to have purchased said goods, and to have given Mrs. Hirschfield one

dollar to bind the bargain; but he admits that his purchase of the same was not until after Mrs. Hirschfield had sold said goods to Munter & Johnson, of which fact he had knowledge, as he assisted Mrs. Hirschfield in negotiating the sale, and assisted in invoicing said goods for Munter & Johnson and Mrs. Hirschfield; and he further admits that he has never paid her anything for said goods except the sum of one dollar; that on the 31st day of January, 1903, Shirek Bros. & Semeria recovered a judgment against Mrs. Hirschfield, William Fitz Henry, and S. Simon, in the justice court for Tacoma precinct, Pierce county, and caused a writ of garnishment to be served upon Munter & Johnson; that certain orders were made upon Munter & Johnson, which were not complied with, and that another party, to wit, Charles L. Westcott, caused a writ of garnishment to issue against Munter & Johnson, garnishing any debts or moneys due from said Munter & Johnson to said Sarah Hirschfield; that plaintiff, William Fitz Henry, brings this action against Munter & Johnson for the purchase price of the goods and fixtures sold by Mrs. Hirschfield to Munter & Johnson; that Mrs. Hirschfield has been made a party defendant to this action, and has filed an answer disclaiming any right or interest in the proceeds of the sale of said goods to Munter & Johnson, or the money now in the registry of the court in this action; that said Munter & Johnson, not knowing to whom the $307.46 (which was the amount paid for the balance of the goods held by Mrs. Hirschfield after the auction sale had ceased) should be paid, have brought the same into court, and deposited it with the clerk of the court, to be distributed by the court to whomsoever the court should adjudge to be entitled to the same; that on or about the 25th day of April, 1903, Thomas Mattison, as assignee of various alleged creditors of Sarah Hirschfield, by leave of court, filed

a complaint in intervention, claiming that the money deposited herein by Munter & Johnson should be distributed to the creditors of Mrs. Hirschfield, ratably, on the ground that the sale by Mrs. Hirschfield to Munter & Johnson was a sale in bulk, as contemplated by the laws of the state of Washington relative thereto, and that Mrs. Hirschfield never gave Munter & Johnson a list of her creditors and no such list was demanded.

The court finds, that while said auction was being carried on, prior to the purchase by said Munter & Johnson, there were sold to various parties the most valuable articles of the stock of goods, and there was realized therefrom the sum of $170, which was ninety per cent. of the cost price thereof; that, after said sales, the balance, as hereinbefore found, was sold to Munter & Johnson as aforesaid, the amount paid being fifty per cent of the invoice price; that there then remained in Mrs. Hirschfield's possession some jewelry and some pieces of drygoods worth about $35; that Mrs. Hirschfield gave full publicity to her proposed sale; and that said sale to Munter & Johnson was not in bulk, as contemplated by the laws of the state of Washington relative thereto; and ordered that the funds be distributed as follows: To Shirek Bros. & Semeria, the sum of $50; to Charles L. Wescott, $175; the balance to William Fitz Henry; which was in accordance with the stipulation entered into between Shirek Bros. & Semeria, Charles L. Westcott, and William Fitz Henry; and all the respective cases, which had been consolidated, were ordered dismissed without costs to any party; that the intervenor, Mattison, be dismissed from the action, and costs taxed in favor of plaintiff against him as to costs of intervention. From this decree the intervenor appeals.

A motion is made by respondents to dismiss the appeal for the reason that no statement of facts has been served,

settled, and filed, or returned to this court in this cause, and that this court cannot, therefore, try this cause over again on the merits without reviewing the testimony taken in the court below. But this motion is not tenable for the reason that the only contention of the respondents is that the conclusions of law are justified by the findings of fact. The findings of fact and the conclusions of law being here, this court has full jurisdiction to try that question, and the statement of facts is not essential or necessary for that purpose.

We think the court erred in holding that this was not a sale of goods in bulk. § 1, ch. 109, Laws 1901, p. 222, provides as follows:

"It shall be the duty of every person who shall bargain for or purchase any stock of goods, wares, or merchandise in bulk, for cash, or on credit, before paying to the vendor, or his agent or representative, any part of the purchase price thereof, or any promissory note, or other evidence therefor, to demand of, and receive from, such vendor, or agent, or if the vendor or agent be a corporation, then from the president, vice-president, secretary, or managing agent of such corporation, a written statement, sworn to substantially as hereinafter provided, of the names and addresses of all the creditors of said vendor, to whom said vendor may be indebted, together with the amount of the indebtedness, due or owing, and to become due or owing, by said vendor to each of such creditors; and it shall be the duty of such vendor or agent to furnish such statement, . . ."

In this case the findings of fact show that the purchasers demanded this statement of facts of Mrs. Hirschfield, but that she refused to furnish the same. It would seem that it would make no difference what preceded the final sale. The fact remains that all the goods that Mrs. Hirschfield had left were not sold in the ordinary course

of trade, or by auction, but were sold in bulk to respondents Munter & Johnson. § 4 of the same act defines what is a sale in bulk as follows:

"Any sale or transfer of a stock of goods, wares, or merchandise out of the usual or ordinary course of business or trade of the vendor, or whenever substantially the entire business or trade therefor conducted by the vendor, shall be sold or conveyed, or whenever an interest in or to the business or trade of the vendor is sold or conveyed, or attempted to be sold or conveyed, shall be deemed a sale and transfer in bulk in contemplation of this act."

We are all of the opinion that the sale of these goods was a sale in bulk, within the contemplation of the act, which also provides that such sale shall be void. We also think that the object of this law was to hold the goods of debtors under such circumstances as a trust fund for the benefit of all the creditors, and to hold the purchaser in possession as a trustee for such creditors.

This being so, the cause will have to be reversed, with instructions to distribute the funds pro rata to all of the creditors who are parties to the suit, including intervenor Thomas Mattison, and that whatever right William Fitz Henry may have to this fund is subject to the rights of all the other parties.

FULLERTON, C. J., and HADLEY, MOUNT, and ANDERS, JJ., concur.