# CASES

DECIDED IN THE

# SUPREME COURT OF GEORGIA

AT THE

## MARCH TERM, 1908.

---

## JAQUES & TINSLEY COMPANY *v.* CARSTARPHEN WAREHOUSE COMPANY.

1. Where A bought from B a stock of goods in bulk, in part payment of a debt then due by B to A, without complying with the provisions of the act approved August 17, 1903 (Acts 1903, p. 92), "to regulate the sale of stocks of goods, wares, and merchandise in bulk," etc., A was liable in garnishment to a creditor of B for the value of the goods, when the same was not more than the amount of the indebtedness sought to be collected from B, although A had disposed of the goods before service of the summons of garnishment.

2. The act above referred to is not violative of the provision of the constitution of Georgia which declares: "No person shall be deprived of life, liberty, or property except by due process of law;" nor of the provision of the Federal constitution which declares: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Argued November 18, 1907.—Decided July 15, 1908.

Questions of law, certified by the Court of Appeals.

*Charles H. Hall Jr.,* for plaintiff in error.

*Martin & Morcock,* contra.

FISH, C. J. The Court of Appeals has certified to this court the following questions:

"1. In a garnishment suit, instituted in a justice's court, when it appears that the garnishee had bought from the defendant in

the main action a stock of goods in bulk, in part payment of a debt then due by the main debtor to the garnishee, without complying with the provisions of the act of the General Assembly approved August 17, 1903, 'to regulate the sale of stocks of goods, wares, and merchandise in bulk,' etc., (this question assuming that act to be constitutional), and that prior to the service of the summons of garnishment the garnishee had sold the stock of goods to a third person and had none of them in his possession, is the plaintiff entitled to a judgment to the extent of the value of the goods against the garnishee, who, by answer, denies the indebtedness, but admits the facts above set out?

"2.   Is the act of the General Assembly mentioned above violative either of the following provision of the constitution of the State of Georgia, to wit: article 1, section 1, par. 3, 'No person shall be deprived of life, liberty, or property except by due process of law;' or of the following provision of the constitution of the United States, to wit: section 1 of the 14th amendment, 'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws' ?"

1.   As a general rule, a garnishee's liability to a creditor of the principal defendant is conditioned upon his liability to such defendant,—in other words, a creditor can not reach by garnishment any assets which his debtor could not recover from the garnishee. *Tim* v. *Franklin,* 87 *Ga.* 93 (13 S. E. 259). This rule is subject, however, to an exception, where the garnishee is in possession of effects of the defendant under a transfer fraudulent as to his creditors. In such a case, though the defendant can maintain no action against the garnishee, yet a creditor of the defendant may subject the effects in the garnishee's hands by garnishment. Such exception to the general rule has in several States been created by statute, but in many jurisdictions the courts have recognized it in the absence of a statute. 14 Am. & Eng. Enc. L. 790; 20 Cyc. 663, 993; Drake on Attachment, §458; Rood on Garnishment, §76; 2 Shinn on Attachment and Garnishment, §546 (m) ; Waples on Attachment and Garnishment, §§425, 426. This court has held that assets in the hands of an assignee under an assignment void

as to creditors may be reached by garnishment. *Dawson* v. *Figueiro,* 16 *Ga.* 610; *Miller* v. *Conklin,* 17 *Ga.* 430 (63 Am. D. 248); *Norton* v. *Cobb,* 20 *Ga.* 44. In such a case the assignor could not have maintained an action against his assignee; yet it was held that the assignee was liable to the assignor's creditors under process of garnishment. In the cases cited, however, the assignee · was in possession of the effects and credits assigned or collections thereon when served with the summons. The ruling in *Phillips* v. *Weston,* 16 *Ga.* 137, is not authority that property held under a fraudulent transfer can not be reached by garnishment. It was there held, that, under the facts alleged in the bill in equity, the remedy by garnishment was not so full and complete as a proceeding in equity, for the reasons: (1) that the time had passed for traversing the garnishee's answer—a satisfactory reason being given why this was not done at the proper time; (2) that the creditors wanted both discovery and relief; and (3) that as the proceeding was a creditor's bill, if there should be a recovery, a court of equity would be the most appropriate forum for distributing the fund amongst the creditors. It is true that in the opinion a technical difficulty as to the remedy by garnishment was suggested, which it was said could not well be overcome; but evidently the ruling was not based on such technicality, but on the grounds above stated. If the garnishee, at the time he is served with summons of garnishment, has in his hands property or effects held under a transfer fraudulent as to the defendant's creditors, then, as no title passed to the garnishee, as against the creditors, his liability to them would be the same as if he held the property and effects without such transfer.

What is the liability of a garnishee, who held goods of the defendant under a transfer void as to the creditors of the latter, but who sold them prior to the service of the summons of garnishment? In Hawes *v.* Mooney, 39 Conn. 37, Seymour, J., said: "The principle upon which in such cases the creditor may have redress by garnishment is that the transfer, being fraudulent, is as against a creditor void; and although the title may pass to the fraudulent grantee as between the parties, yet, as against a creditor, the grantee may be treated as mere trustee and bailee of the goods. But in the case under consideration the goods had been sold by the defendant before he was factorized [the factorizing

process there being in substance the same as our garnishment proceeding], and the defendant's counsel make the point that the proceeds of the sale are not liable to be taken by this process. But it is difficult to see any sound distinction between the goods themselves and the proceeds of their sale. If the transfer of the goods may be treated by a creditor as void, and the transferee treated as having in his hands the goods of the debtor, then, following out the rule, the proceeds of the sale of the goods are, as against a creditor, the debtor's monies in the defendant's hands." The factorized defendant, who stands as a garnishee under our process, was held liable for the proceeds of the sale of the goods. The value of the goods fraudulently transferred is stated, and it does not appear what was the amount of the proceeds of the sale by the fraudulent transferee. The question whether the fraudulent transferee was liable for the proceeds of the sale by him, rather than for the value of the goods, was not referred to, and we take it that the court considered the value of the goods as the proceeds of the sale.

In Gutterson *v.* Moore, 58 N. H. 529, one to whom the principal defendant had fraudulently and without consideration conveyed personalty was held liable, under a trustee process, substantially similar to our garnishment proceeding, to a creditor of the defendant for the proceeds of a sale of such personalty made by him. It does not appear that the price realized by the transferee was not the real value of the property, and it seems that the creditor only contended for the proceeds of the sale. In Risser *v.* Rathburn, 71 Iowa, 113 (32 N. W. 198), it was held that a fraudulent vendee of goods, who had sold the same, could be held liable for the proceeds on garnishment, in a suit against his vendor by a creditor sought to be defeated by the fraudulent transfer. It appears that there was a specific finding by the jury of the actual value of the goods at the time of the fraudulent transfer, and that the judgment of the court against the garnishee was based on such finding. In Jaseph *v.* Bank, 132 Ind. 39 (31 N. E. 524), it was held that a fraudulent assignee, who disposed of the personalty assigned and converted the proceeds to his own use, was liable to the creditors of the assignor in proceedings in garnishment, subsequently begun, for the value of the property so conveyed to and disposed of by him; overruling Jaseph *v.* Kronerberger, 120 Ind. 945 (22 N. E.

301)', in which it was held that the creditor stands in the shoes of the debtor, and unless the debtor himself could have maintained an action against the garnishee for the money or the debt, the creditor can not hold him as garnishee. In Kohn v. Fishback, 36 Wash. 69 (104 Am. St. R. 941, 78 Pac. 199), it was held, that one who purchased from a debtor a stock of goods in bulk, without complying with the provisions of the statute regulating sales of stocks of goods in bulk, became a trustee of the goods so purchased, and responsible as garnishee to the seller's creditors for the disposition thereof; and that when the trial court found that the goods were worth more than the amount due the garnishing creditor from the vendor, it was immaterial that the value of the goods at the time the same were disposed of was not shown; thereby clearly indicating that such a vendee's liability was the value of the goods at the time he disposed of them. It appeared in that case that the vendee had sold and delivered the goods prior to the service of the writ of garnishment upon him, but it does not appear how much he received for them. Dunbar, J., speaking for the court, said: "It is true the garnishee answered, and probably in accordance with the facts, that he did not at that time have any of the property of the defendant in his possession, and that he was not indebted to him. But, in contemplation of law, he had the property of the defendant in his hands, because, having purchased the property in fraud of law, without complying with the provisions of the law in relation to sales of property in bulk, he stood in the position of a trustee of the property, responsible to the cestui que trust or the creditors for the disposition of such property." Citing Fitz Henry v. Munter, 33 Wash. 629 (74 Pac. 1003). An examination of the garnishment statutes of Iowa, Indiana, and Washington does not disclose any substantial difference between them and the garnishment statute of this State on the point in question.

We are of opinion that the purpose of the statute regulating sales of stocks of goods, wares and merchandise in bulk was to constitute such goods, etc., sold in bulk without complying with the provisions of the statute, trust property in the hands of the purchaser for the benefit of the creditors of the seller. Fitz Henry v. Munter, supra. And if a purchaser under such circumstances sells the goods, he is liable, if the statute be constitutional, under

a subsequent garnishment proceeding, for their value at the time he sells them, provided the value is not more than the amount of the garnishor's debt against the principal defendant. In *Reynolds* v. *Padgett,* 94 *Ga.* 347 (21 S. E. 570), the late Chief Justice Simmons said: "All the authorities agree that one who takes and sells personal property belonging to another, without the consent of the owner, is liable for its value in an action upon an implied promise to pay for the property." A direct ruling to the same effect was made in *Buchanan* v. *McClain,* 110 *Ga.* 477 (3), (35 S. E. 665), where it was held that such an action is one arising ex contractu. The garnishor steps into the defendant's shoes, acquiring his rights, and may ordinarily subject by garnishment any demands for which the defendant could maintain debt or indebitatus assumpsit. Cook *v.* Walthall, 20 Ala. 334; Godden *v.* Pierson, 42 Ala. 370. It has been held that though the owner of personalty wrongfully sold by another may waive the tort and maintain an action of assumpsit for its value, on an implied promise to pay for the property, it does not follow that a creditor of such owner may hold the seller liable in garnishment on such implied promise, for the reason that the creditor has no right to waive the tort, or to surrender the right to recover back the property, or to release the damages against the tort-feasor, as such rights appertain to the owner of the property alone, and his creditor can not defeat them by garnishing the wrong-doer; and that to allow the creditor to resort to garnishment in such a case might be productive of confusion and wrong, as it would not prevent the owner of the property from suing for its recovery, or for damages, and would yet concede to him the benefit of the appropriation of the value of the property to the payment of his debt. Lewis *v.* Dubose, 29 Ala. 219. We apprehend, however, that these reasons do not apply in a case where the owner, because of the invalidity, as to his creditors, of his conveyance to the garnishee, is estopped from maintaining an action of any character against him.

To the suggestion that the demand for the value of the goods is unliquidated, and, therefore, garnishment will not lie, we reply it is not every unliquidated claim that is without the reach of garnishment; for where such claim arises ex contractu, and its amount is susceptible of ascertainment by some standard referable to the contract, it becomes sufficiently certain to be reached by garnish-

ment. 14 Am. & Eng. Enc. L. 764 (b). The implied contract of one who sells the goods of another without his consent is to pay the owner their value, which may be readily ascertained. Again it was held in *Kilgo* v. *Castleberry, 38 Ga. 512* (95 Am. D. 406): ·"Where a fi. fa. against two joint obligors, mutually interested in the consideration, is satisfied by the sale of the property of one of them, the other is indebted to him for contribution according to the equitable rights of the two in the original contract, and the creditors of the obligor whose property has been sold may reach this obligation to contribute, by process of garnishment, and have, therefore, a remedy at law."

Assuming the statute regulating sales of stock of goods in bulk to be constitutional, our conclusion is, that the first certified question should be answered in the affirmative.

2. Is the above-mentioned act of the General Assembly violative either of the provision of the constitution of this State, or of that of the Federal constitution, set forth in the second certified question? The provisions of the act are, in substance, as follows: Every sale or transfer of a stock of goods, wares, or merchandise in bulk, or of substantially the entire business theretofore conducted by the vendor, or every sale or transfer of a stock of goods, wares and merchandise out of the usual or ordinary course of business or trade of the sender, shall be conclusively presumed to be fraudulent as to the creditors of the vendor, unless the purchaser shall, before paying any of the purchase-price, or giving his note for any portion of the same, demand and receive from the vendor a written statement under oath of the names and addresses of all his creditors, together with the amount of indebtedness due or owing each of them, and unless the vendee shall also, ·at least five days before the completion of the purchase, notify, personally or by registered mail, each of such creditors of the proposed sale, the price to be paid, and the terms and conditions of the sale, accompanying such notice with a copy of a statement of the assets and liabilities of the vendor as furnished the purchaser by him. The act makes it the duty of the vendor to furnish to the purchaser a verified list of creditors, with their addresses and the amount owing to each, and the statement of the vendor's assets and liabilities above referred to, as well as the cost price of the merchandise to be sold, which shall be arrived at by

an inventory taken at the time by the vendor and the purchaser. The act makes it a misdemeanor for the vendor to knowingly or wilfully furnish to the purchaser a false statement, or to fail to include the names of all his creditors in the statement furnished. Sales by executors, administrators, receivers, or public officers under judicial process, are expressly exempted from the provisions of the act.

Statutes regulating sales of stocks of goods, wares, and merchandise in bulk have, within a comparatively recent period, been enacted in twenty-four States of the Union, and by Congress for the District of Columbia. These statutes are quite similar in substance, though some of them contain rather drastic provisions which are not to be found in others. Their common purpose is the protection of creditors against a class of sales frequently fraudulent, and which leave creditors without means of collecting that to which they are justly entitled. The questions whether such enactments contravene the constitutional provisions against the deprivation of liberty or property except by due process of law, or those against class legislation, have been presented to a number of courts for decision. The adjudications as to the validity of such statutes by the different courts are not uniform. The power of the legislature to adopt reasonable regulations to prevent fraud in the transfers of property seems to be conceded in all of the opinions pronounced on the subject. The main point of difference is as to the reasonableness of the regulations which have been prescribed by statute. The constitutionality of such enactments has been upheld in the following cases: Neas *v.* Borches, 109 Tenn. 398 (71 S. W. 50, 97 Am. St. 851) ; McDaniels *v.* Connelly Shoe Co., 30 Wash. 549 (71 Pac. 37, 60 L. R. A. 947, 94 Am. St. R. 889) ; Squire *v.* Tellier, 185 Mass. 18 (69 N. E. 312, 102 Am. St. R. 322) ; Walp *v.* Mooar, 76 Conn. 515 (57 Atl. 277) ; Young *v.* Lemieux, 79 Conn. 434 (65 Atl. 436) ; Williams *v.* Fourth National Bank, 15 Okla. 477 (82 Pac. 496) ; Spurr *v.* Travis, 145 Mich. 721 (108 N. W. 1090, 116 Am. St. R. 330) ; Musselman Grocery Co. *v.* Kidd (Mich.), 115 N. W. 409. However, the statutes of Tennessee and Oklahoma provide that such sales made without compliance with the statutory provisions shall be presumed to be void. In Thorpe *v.* Pennock, 99 Minn. 22 (108 N. W. 940), it was held, that a statute entitled "An act to prevent

sales of merchandise in fraud of creditors," which declares that sales made without compliance with its provisions "will be presumed to be fraudulent and void," merely prescribes a rule of evidence, and so construed it is not unconstitutional. The court said, however, that the weight of authority would sustain the validity of the statute, if it should be so construed as to render fraudulent and void sales made in violation of its terms. The Supreme Court of Indiana, in Sellers v. Hayes, 163 Ind. 422 (72 N. E. 119), after some discussion as to the constitutionality of the statute of that State regulating "sales in bulk," practically leaves the question undecided. The same court, in McKinster v. Sager, 163 Ind. 671 (72 N. E. 854, 68 L. R. A. 273, 103 Am. St. R. 268), held that a statute avoiding a sale of a stock of goods in bulk, in favor of persons who have sold goods or loaned money for continuance of the business, unless certain conditions are complied with, and rendering the vendee liable to pay the claims of such persons, is void, as denying other creditors of the vendor the equal protection of the laws.

In Black v. Schwartz, 27 Utah, 387 (76 Pac. 22, 65 L. R. A. 308, 101 Am. St. R. 971), it was held: "A statute prohibiting, under a penalty, any merchant, whether solvent or insolvent, from selling or disposing of his stock of goods in bulk, without an inventory thereof, and notification to his creditors, and which applies also to persons acting in a fiduciary capacity and under judicial process, and which does not apply to merchants who are not indebted, is unconstitutional, as depriving a solvent merchant of his property and liberty to contract, without due process of law, and as being class legislation." And further: "Statutes which punish criminally one person for the doing of an act which another person in the same line of business may lawfully do are unconstitutional as being class legislation, and as a deprivation of property and liberty without due process of law." The statute there held to be unconstitutional declared that "Any person wilfully selling or buying any stock of goods in any manner other than in this act provided shall be deemed guilty of a misdemeanor, and shall upon conviction thereof be subjected to a fine of not less than fifty dollars, nor more than three hundred dollars." In referring to the above-mentioned decisions rendered by the courts of Massachusetts, Tennessee, and Washington, Bartch, J., who pronounced

the opinion in the Utah case, said: "While enactments of similar character have been upheld in those States, an examination shows that they all differ materially, in important features, from the one here under consideration. The law in Massachusetts exempts all sales from its provisions made by officers acting in a fiduciary capacity or under judicial process; and, while it declares a sale made in violation of its provisions fraudulent and void as against creditors, it does not subject the seller and buyer acting in disobedience of the law to criminal prosecution." He said further: "We apprehend, from a perusal of that opinion, that if there, as here, the determination of the legislature had gone to the length of applying the provisions of the act to persons acting in a fiduciary or official capacity, or under judicial process, and providing criminal punishment for the persons affected, if they disobeyed such provisions, the court would have hesitated before they pronounced the act constitutional." Attention was called to the fact that under the statute of Tennessee a sale made in disobedience of its provisions is only "presumed to be fraudulent and void as against creditors of the seller;" and that the provisions of the statute of Washington are so materially different from those of the act of the State of Utah that the decision in McDaniels *v.* Connelly Shoe Company, supra, could not be regarded as authority in the case under consideration. So in Miller *v.* Crawford, 70 Ohio St. 207 (71 N. E. 631), it was held that "An act to prevent fraud in the purchase, disposition, or sale of merchandise" is unconstitutional, because it applies an unwarrantable restriction upon the right of the individual to acquire and possess property, and because it contains a forbidden discrimination in favor of a limited class of creditors. That act prescribed penalties upon the seller and the purchaser for non-compliance with the duties imposed upon them, respectively, therein. And, as in the Utah statute, no exception was made as to sales by persons or officers acting in a fiduciary capacity or under judicial process.

In Wright *v.* Hart, 103 App. Div. Sup. Ct. (N. Y.) 218 (93 N. Y. Supp. 60), the statute of New York declaring sales of stocks of merchandise in bulk to be void, unless the vendor and vendee comply with certain formalities, was held to be constitutional, two of the five Judges presiding dissenting. This decision was reversed by the Court of Appeals, three of the seven Judges presid-

ing dissenting. Wright *v.* Hart, 182 N. Y. 330 (75 N. E. 404, 2 L. R. A. (N. S.) 338). The New York statute differs in some respects from the Georgia statute. The former requires that the seller and purchaser shall, at least five days before the sale, make a full and detailed inventory showing the quantity and, so far as possible with the exercise of reasonable diligence, the cost price of each article to be included in the sale, and that the purchaser shall, at least five days before the sale, in good faith, notify or cause to be notified personally, or by registered mail, each of the seller's creditors of whom the purchaser has knowledge, or can with the exercise of reasonable diligence acquire knowledge, not only of the proposed sale and the price to be paid by the purchaser, but also of the stated cost price of the merchandise to be sold. That act also requires the purchaser, at least five days before the sale, to file a truthful answer of each and all the inquiries which the act makes it the duty of the purchaser to make of the seller, at least five days before the sale, as to the name and place of business of each and every creditor of the seller and the amount owing each of them; but the place of filing is not designated. It does not except from its provisions sales made by executors, etc., and judicial sales. In the majority opinion of the Court of Appeals stress is laid upon these drastic provisions of the statute.

While the statute of Georgia makes it a misdemeanor for the seller to knowingly and wilfully make or deliver, or cause to be made or delivered, any false statement, or any statement of which any material portion is false, or to fail to include the names of all his creditors in any statement required of him by the act, it will be noted that it does not make penal the mere failure of the seller or the purchaser to comply with the requirements imposed by the act upon them respectively, as do the Utah and Ohio statutes. If the statute of this State had not made it a misdemeanor for the seller to knowingly and wilfully make a false statement under oath, he would nevertheless be punishable for so doing, for the offense of false swearing, under our Penal Code. Granting that the statute under consideration may, as to those coming within its scope, interfere, to some extent, with their liberty of contract and the right to use and dispose of their property as they see fit, there are many other statutes whose beneficial purpose is the prevention of fraud and the advancement of justice, which may be subject to the same

criticism, the constitutionality of which, if ever questioned, has been sustained. Such are the statute of frauds, insolvent laws, recording acts, statutes regulating assignments, prohibiting usury, declaring titles void when made as part of an usurious contract, prohibiting married women from making binding contracts of suretyship, assuming the debts of their husbands, selling their separate estates in extinguishment of their husbands' debts, declaring void a sale made by a married woman to her husband or trustee, without being allowed by an order of the superior court of her domicile, denying a husband, after a separation from his wife, the right to transfer any of his property, except bona fide in payment of pre-existing debts, so as to avoid the vesting thereof according to the final verdict of the jury in an action for divorce, creating liens in favor of laborers, mechanics, materialmen and others, prescribing how deeds, mortgages, and wills shall be executed, requiring the written consent of parents or guardians before liquor or opium can be sold to certain persons, requiring the inspection of fertilizers, etc., before sale, and many other statutes of a similar nature that might be mentioned.

In *Jenkins* v. *State,* 119 *Ga.* 430 (46 S. E. 629), it was held to be within the province of the legislature, in the exercise of its police powers, to make it unlawful to transport seed-cotton in or from a named county, or from one place to another therein, between the hours of sunset and sunrise, except when carried from the field where picked to the place of storage on the premises of the owner, and to prescribe a penalty for so doing.

In *Bazemore* v. *State,* 121 *Ga.* 619 (49 S. E. 701), the accused was charged with a misdemeanor for the violation of an act of the General Assembly making it "unlawful to purchase, sell, barter, exchange, or deliver in the county of Muscogee any cotton in the seed between the 1st day of August and the 20th day of December, without the written consent of the owner of the land whereon said cotton was produced, or his agent." There was a demurrer to the indictment, on the ground, that the act creating the offense was void under the constitutions of this State and of the United States, in that it deprived a person of the use of his property without due process of law, and deprived a citizen of the rights, privileges, and immunities guaranteed by the constitutions of this State and of the United States, and was not a valid exer-

cise of the police power of the State.   Upon an assignment of error
upon the judgment of the trial court overruling the demurrer,
this court, in affirming such judgment, held: "1.   Under the
police power, laws may be passed for regulating common occupa-
tions which from their nature afford peculiar opportunity for im-
position and fraud.   2.   Because of its value, the ease with which
it is taken from the field, and the difficulty of detecting the thief,
the State may regulate the sale of seed-cotton, and fix a punish-
ment upon the person who buys in violation of the terms of the
statute."   As said by the Supreme Court of Michigan, in Spurr
v. Travis, 145 Mich. 721 (116 Am. St. R. 330, 108 N. W. 1090),
"it is  .  .  safe to state as a general rule that where in the exer-
cise of the police power a beneficent result is sought, and legisla-
tion is enacted in protection of rights which would, but for the
enactment, be subject to defeat, such legislation does not infringe
the liberty of the citizen in a legal sense or deprive him of prop-
erty because it involves regulations which may postpone for a rea-
sonable time the exercise of his right to sell."

In testing the validity of the statute which we have under con-
sideration, by the principles announced in the cases cited, we may
appropriately quote the apt and vigorous language of Vann, J.,
in a dissenting opinion delivered in Wright v. Hart, 182 N. Y.
330, as to the purpose of the statute of New York, regulating the
sales of -merchandise in bulk.   He said:   "The object of the act
was to suppress a widespread evil, well known to current history
and condemned by repeated adjudications in this court and in all
the leading courts of this State from time out of mind.   That evil
is the tendency and practice of merchants who are heavily in debt
to make secret sales of their merchandise in bulk, for the purpose
of defrauding creditors.   Common observation shows that when a
dealer has reached a point in his business career where he can not
go on, owing to the claims of creditors, the temptation is strong
and the practice common of making a fraudulent sale.   Fraud
works in secret, and the bargain is closed and the purchaser in
possession before the creditors know anything about it.   The evil
is difficult for the courts to handle, because the evidence to un-
cover the furtive scheme must, as a rule, be drawn from hostile wit-
nesses, usually relatives or intimate friends of the seller, who took
part in the fraud and shared in the plunder.   All those who have

had to do with the investigation of such transactions realize how well these frauds are protected by the forms of law and how frequently they are defended by perjury. The form of the fraud varies with the skill of the perpetrator and his advisers, but the unvarying purpose is to hold and enjoy property which equitably belongs to his creditors. Inadequacy of consideration, absconding with the proceeds of the sale, and the preference of fictitious claims are familiar methods. Many other means of holding on to property and concealing the facts are resorted to, and it is not uncommon to see a dealer in possession of all that he had before he failed, and, acting under another name, carrying on the same business with the same stock, all unpaid for, in unblushing defiance of his creditors. Whatever the method of committing the fraud, its success depends on secrecy and perjury." Considering the peculiar opportunity and facility of those at whom the statute is aimed for the commission of fraud, the difficulty of establishing it, the consequent danger of loss by creditors, and the beneficent result sought, the enactment in question seems clearly a proper exercise of the police power of the State.

Nor is the act class legislation. "Laws public in their objects may, unless express constitutional provision forbids, be either general or local in their application. They may embrace many subjects or one, and they may extend to all citizens, or be confined to particular classes, as minors, or married women, bankers or traders, and the like. . . If the laws be otherwise unobjectionable, all that can be required in these cases is that they be general in their application to the class or locality to which they apply; and they are then public in character, and of their propriety and policy the legislature must judge." Cooley on Constitutional Limitations (7th ed.), 554. The class to which the statute applies is sellers of stocks of goods, wares, and merchandise in bulk, and as the purpose of the act is the protection of creditors, of course only such sellers as owe debts are brought within its scope.

Another question which is suggested by certain language in the act, but which has not been presented in the argument of the case, is whether, in enacting this law, the legislature has infringed upon the right of the courts to determine, unhampered by legislative dictation, the sufficiency of evidence to establish a fact upon the existence of which the rights of parties depend, and thus denied

due process of law. The language to which we refer is contained
in the third section of the act, wherein it is declared that unless
the requirements of the statute as to a sale of a stock of goods,
wares, and merchandise in bulk are complied with, "such sale or
transfer shall, as to any and all creditors of the vendor, be con-
clusively presumed to be fraudulent." Did the legislature, by us-
ing in this section the language which we have just quoted, intend
to prescribe a conclusive rule of evidence by which the courts
were to be governed in ascertaining when fraud exists in the sale
of a stock of goods in bulk? If it did, it transcended the power of
the legislative department of the government and invaded the ex-
clusive province of the courts; for it is well settled that the legis-
lature can not, under the guise of prescribing a rule of evidence
applicable to a given class of cases, deprive the courts, in those
cases, of their exclusive power to decide when an essential fact has
been proved. As said by Nisbet, J., in *Dougherty* v. *Bethune,* 7
*Ga.* 90, 92, "The legislature has no power to legislate the truth
of facts. Whether facts upon which rights depend are true or
false is an inquiry for the courts to make, under legal forms; it
belongs to the judicial department of the government. By the
constitution the legislative and judicial departments are distinct."
But a statute which in reality deals with some rule of substantive
law is not obnoxious to this principle, although it may contain lan-
guage which, standing by itself, is susceptible of the construction
that it prescribes, as a rule of evidence, what shall be deemed and
held by the courts to be conclusive evidence of a fact upon the exis-
tence of which the rights of parties are dependent. If it were the in-
tention of the General Assembly, in enacting this statute, to pre-
scribe for the courts a conclusive rule of evidence by which they are
to be guided in determining whether a sale of a stock of goods,
wares, or merchandise has been made for the purpose of defrauding
the creditors of the seller, it would seem that the title of the act
would have indicated such intention. The statute is entitled: "An
act to regulate the sale of stocks of goods, wares, and merchandise in
bulk, to provide certain penalties in connection therewith, and for
other purposes." Certainly there is nothing in this title to indi-
cate a purpose on the part of the lawmakers to make a new rule of
evidence to be applied whenever the question of fraud in the sale
of a stock of goods in bulk should arise. While the act was passed

with the object of preventing persons in debt, who own stocks of goods, wares, and merchandise, from selling the same in bulk for the purpose of defrauding their creditors, its subject-matter is not fraud in such sales, but is the regulation of them. It prescribes certain duties which must be performed by the buyer, and certain correlative duties which must be performed by the seller. This is regulation, pure and simple. It then, in order to enforce the performance of these duties, declares, in substance, that, unless these duties are complied with, "such sale or transfer shall, as to any and all creditors of the vendor, be conclusively presumed to be fraudulent." The meaning of this declaration is, that the sale shall, as to such creditors, be fraudulent in law, whatever it may be in fact. This is a declaration of substantive law, and not the enactment of a conclusive rule of evidence for the ascertainment of fraud in such sales. In other words, the sale, as to creditors of the seller, shall be void, irrespective of the question whether it was in fact made for the purpose of defrauding them, because the requirements of the statute enacted for their protection have not been complied with. Granting the authority of the legislature to regulate sales of this character, it follows that it can, when prescribing regulations for such sales, declare that unless they are made in conformity to the statutory requirements they shall be void, as to the creditors of the seller, and it matters not whether the declaration as to the invalidity of sales not made in conformity to the statute is direct or indirect, if the purpose to declare such sales void is apparent. The purpose of the act is not to provide an efficient means for uncovering fraud already committed, by providing a conclusive rule of evidence by which the fact of its existence may be established; but it is to prevent the commission of fraud, by providing that, in the class of sales with which it deals, certain specified requirements must be complied with, or the sale will be held to be fraudulent in law. It lays its requirements across the threshold of the transaction and, in effect, declares that no contract of sale, valid as to the creditors of the seller, can be entered into unless these requirements are observed. Our construction is borne out by the language of the 5th section of the act, which declares that a sale not made in compliance with the act "shall be deemed a fraudulent transaction or transfer," etc. The legislature of this State long ago declared that certain "acts by

debtors shall be fraudulent in law against creditors and others, and as to them null and void," among them being, "Every assignment or transfer by a debtor, insolvent at the time, of real or personal property, or choses in action of any description, to any person, either in trust or for the benefit of or in behalf of creditors, where any trust or benefit is reserved to the assignor or any person for him." Civil Code, §2695. The declaration by the statute that such an assignment by an insolvent debtor shall be fraudulent in law against creditors is a declaration of substantive law, and, so far as we know, has always been so considered; and no court would ever inquire whether the assignment was actually made for the purpose of defrauding creditors of the assignor or not. If the statute had declared that such an assignment should be conclusively presumed to be fraudulent as to creditors of the assignor, it would, in our opinion, have meant the same thing. A statutory declaration that a certain act, done under given circumstances, which may or may not be actually fraudulent, shall be conclusively presumed to be fraudulent, as to parties whose rights might otherwise be injuriously affected by it, is equivalent to a declaration that such an act shall, as to such parties, be fraudulent in law, which precludes all inquiry into the actual motives with which it was done. It is hardly necessary to say that the statute which we have been construing is unlike statutes which undertake to make the recitals of mere ministerial officers in tax deeds, etc., conclusive evidence of the validity of the sale. Such statutes are held to be ineffective, in so far as they seek to preclude inquiry by the courts into the question of the existence of the essential prerequisites to a deprivation of property under the exercise of the governmental power. The legislature can not make the mere official statement of a public ministerial officer conclusive evidence of the existence of that which may, for the want of a better expression, be called the jurisdictional facts upon which the power to divest one of the title to his property depended.

In view of what we have said, and considering also the declaration of our State constitution that "The General Assembly shall have the power to provide for the punishment of fraud, and shall provide, by law, for reaching the property of the debtor concealed from the creditor" (Civil Code, §5728), our conclusion is, that the enactment in question does not contravene the provisions of

the constitution of the United States, or those of the constitution of this State, which are set forth in the second certified question.
*The other Justices concur, except*

ATKINSON, J., (dissenting from the ruling made in the second headnote.) The substance of the statute under consideration is set forth at the beginning of the second division of the majority opinion, and repetition here is unnecessary. It is sufficient to say that the statute in question is of that class which provides that, as a matter of law, sales of stocks of goods, wares, and merchandise in bulk, made without complying with certain formalities required by the statute, shall, as against creditors, be conclusively presumed to be fraudulent. The question certified is as to whether the statute is void on the ground that it is violative of article 1, section 1, paragraph 3, of the constitution of the State of Georgia (Civil Code, §5700), which provides: "No person shall be deprived of life, liberty, or property, except by due process of law;" and also whether it is void on the ground that it is violative of section 1 of the 14th amendment to the constitution of the United States (Civil Code, §6030), which provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." A case involving the constitutionality of a statute relating specifically to sales of stocks of merchandise in bulk has not been decided either in this court or in the Supreme Court of the United States. Statutes relating to sales in bulk and bearing a varying degree of similarity to the statute under consideration have been under review by courts of other States; and upon the question of their constitutionality there is a marked diversity of opinion. Such cases will be cited, and for convenience will be named in three separate groups, and hereinafter referred to as classes 1, 2, and 3. Statutes which declare sales absolutely void as against creditors, where the parties fail to comply with the formalities required in making the sales, are held to be constitutional, in the following cases: (Class 1) Squire *v.* Tellier, 185 Mass. 18 (69 N. E. 312, 102 Am. St. R. 322); McDaniels *v.* Connelly Shoe Co., 30 Wash. 549 (71 Pac. 37, 60 L. R. A. 947, 94 Am. St. R. 889); Walp *v.* Mooar (Lamkin), 76 Conn. 515 (57 Atl. 277); Spurr *v.* Travis,

145 Mich. 721 (108 N. W. 1090, 116 Am. St. R. 330, 9 Ann. Cas. 250) ; Young. *v.* Lemieux, 79 Conn. 434 (65 Atl. 436, 8 Ann. Cas. 452) ; Musselman Grocery Co. *v.* Kidd, Dater & Price Co. (Mich.), 115 N. W. 409. Substantially similar statutes are held to be unconstitutional, in the following cases: (Class 2) Block *v.* Schwartz, 27 Utah, 387 (76 Pac. 22, 1 Ann. Cas. 550, 65 L. R. A. 308, 101 Am. St. R. 971) ; McKinster *v.* Sager, 163 Ind. 671 (72 N. E. 854, 68 L. R. A. 273, 106 Am. St. R. 268) ; Sellers *v.* Hayes, 163 Ind. 422 (72 N. E. 119) ; Miller *v.* Crawford, 70 Ohio.St. 207 (71 N. E. 631, 1 Ann. Cas. 558) ; Wright *v.* Hart, 182 N. Y. 330 (75 N. E. 404, 2 L. R. A. (N. S.) 338, 3 Ann. Cas. 263). Other substantially similar statutes, with the exception that, for a failure to comply with the requirements, it is provided that only a rebuttable presumption of fraud shall arise, are held to be constitutional, in the following cases: (Class 3) Neas *v.* Borches, 109 Tenn. 398 (71 S. W. 50, 97 Am. St. R. 851) ; Williams *v.* Fourth National Bank, 15 Okla. 477 (82 Pac. 496, 2 L. R. A. (N. S.) 334, 6 Ann. Cas. 970) ; Thorpe *v.* Pennock Mercantile Co., 99 Minn. 22 (108 N. W. 940, 9 Ann. Cas. 229). An examination of the decisions cited will cover practically the entire body of decisions concerning· the constitutionality of statutes of the several States of this country, relating specifically to the regulation of sales of stocks of goods in bulk. The cases are classified in order that attention may be directed in the first instance to the character of the statute involved and the ruling made in each case. It is provided by the Georgia statute under consideration, that, unless the parties to a sale in bulk of a stock of goods, wares, and merchandise comply with the requirements of the statute, the sale shall be conclusively presumed to be fraudulent as against creditors. One of the requirements is that the vendee shall, at least five days before the completion of the sale, inform each of the creditors of the vendor of the proposed sale, the price to be paid, etc. These provisions are made to apply to every sale in bulk of goods, wares, and merchandise, without regard to whether the vendor is solvent or insolvent, or whether the transaction is in fact honest or fraudulent. As they apply to the parties to all sales of the character mentioned, the righteous as well as the unrighteous are affected exactly alike; and as the presumption of fraud is conclusive, there is no avenue of escape for the righteous. However honest or otherwise legiti-

mate the transaction may be, the five-days notice feature renders it impossible for the parties to perfect a sale within less than five days. It may be to the interest of the parties to conclude their transaction in one day, but their hands will be tied and they will not be at liberty to contract as they desire for a time which at least is as much as five days. The right which they are thus denied is substantial, and the negation complete. The power to contract is a property right, and the liberty of contract is protected by the fourteenth amendment to the Federal constitution, and can not be arbitrarily destroyed, even by the exercise of the police power of the State. Adair *v.* U. S., 208 U. S. 161 (28 Sup. Ct. 277, 52 L. ed.) ; Lochner *v.* New York, 198 U. S. 45, 53, 56, (25 Sup. Ct. 539, 49 L. ed. 937) ; Allgeyer *v.* Louisiana, 165 U. S. 578 (17 Sup. Ct. 427, 41 L. ed. 832). In respect to the feature just mentioned, the State constitution is similar to the Federal constitution, and the authorities cited apply to the former as well as to the latter constitution. The penalty of suspending the legitimate right of contract should not be visited upon the innocent in order to apprehend the guilty. An imposition in that manner is unreasonable and arbitrary. It may be within the bounds of reason for a statute to clothe such transactions with the presumption of fraud; but there ought to be a provision allowing due process of law for the separation of the good from the evil, rather than a provision declaring the presumption conclusive. See, on this point, Thorpe *v.* Pennock Mercantile Co., supra. It would not do to destroy the right of contract altogether or for a day, because, forsooth, some person may abuse the right by making fraudulent sales; yet, carried to the ultimate, that is the conclusion to which the proposition would lead. The statute is not merely regulative, but for a substantial length of time prohibits entirely, and during that time is destructive of the liberty of legitimate contract. It is that destructive feature that renders the statute unreasonable and arbitrary. The certified question should be answered in the affirmative.